**PAUL P., et al., Plaintiffs,**

v.

**John J. FARMER, Jr., Attorney General of New Jersey, et al., Defendants.**

**Civil Action No. 97–2919(JEI).**

United States District Court, D. New Jersey.

Jan. 24, 2000.

Susan L. Reisner, Public Defender for New Jersey by Michael Z. Buncher, Deputy Public Defender, Edward L. Barocas, Assistant Deputy Public Defender, Trenton, NJ, for Plaintiffs.

John J. Farmer, Jr., Attorney General of New Jersey by Stephan Finkel, Senior Deputy Attorney General, Rhonda S. Ber-

liner–Gold, Deputy Attorney General, Trenton, NJ, for Defendants.

## OPINION

IRENAS, District Judge.

Presently before the Court is the summary judgment motion of plaintiff sex offenders in this class action challenge to New Jersey's Registration and Community Notification Act, N.J.S.A. 2C:7–1 *et seq.* ("Megan's Law"). Also before the Court is the cross-motion for summary judgment on behalf of defendants, John J. Farmer, Jr., Jeffrey S. Blitz, William Schmidt, Stephen G. Raymond, Lee A. Solomon, Stephen D. Moore, Arthur Marchand, Clifford J. Minor, Andrew Yurick, Carmen Messano, Stephen B. Rubin, Maryann K. Bielamowicz, Robert W. Gluck, John Kaye, John B. Dangler, Daniel J. Carluccio, Ronald S. Fava, Ronald A. Epstein, Meanie B. Campbell, Dennis O'Leary, Edward Neafsey, John J. O'Reilly, and the United States of America. For the reasons set forth below, plaintiffs' motion is granted and defendants' cross-motion is denied.

## I.

This matter represents the latest skirmish in the battle over "Megan's Law" in New Jersey.[1] Plaintiffs are Tier 2 or 3 registrants under Megan's Law whose offenses were committed after the law's enactment. In their initial complaint, filed with this Court on June 16, 1997, plaintiffs challenged the constitutionality of the Law, alleging that it violated their rights to privacy, due process, and to be free from double jeopardy and cruel and unusual punishment.

Prior to the Court's decision on the merits, the Third Circuit found that the community notification provisions of Megan's Law do not constitute punishment for purposes of the Ex Post Facto and Double Jeopardy Clauses and held that the due process clause "would be violated by any Tier 2 or Tier 3 notification that occurred without a prior opportunity to challenge the registrant's classification and notification plan in a hearing at which the prosecutor has the burden of persuasion and must prove her case by clear and convincing evidence." *E.B. v. Verniero,* 119 F.3d 1077, 1111 (3d Cir.1997), *cert. denied* sub nom *W.P. v. Verniero,* 522 U.S. 1109, 118 S.Ct. 1039, 140 L.Ed.2d 105 (1998). In light of the Third Circuit's opinion in *E.B.,* this Court granted defendants' motion for summary judgment as to plaintiffs' cruel and unusual punishment and double jeopardy claims, but denied summary judgment on the due process claim. The Court also granted summary judgment as to plaintiffs' privacy claim.

Plaintiffs appealed the Court's ruling on their privacy claim to the Third Circuit. During the pendency of this appeal, plaintiffs-appellants filed six motions to supplement the record and appellee, former Attorney General Verniero, filed three motions to supplement the record. The Third Circuit declined to consider the materials proffered by these motions and proceeded to affirm this Court's holding that Megan's Law did not violate plaintiffs' constitutional rights to privacy. *Paul P. v. Verniero,* 170 F.3d 396 (3d Cir.1999). However, the Circuit Court remanded the case back to this Court so that it could consider the material contained in the motions to supplement and "determine whether any action is appropriate" in light of Third Circuit precedent. *Id.* at 406. Specifically, the Third Circuit cited its previous holding in *Fraternal Order of Police v. Philadelphia,* 812 F.2d 105, 118 (3d Cir.1987), that "the fact that protected information must be disclosed to a party who has a particular need for it ... does not strip the information of its protection against disclosure to those who have no similar need."

---

1. For a more complete recitation of the procedural history of this matter see *Paul P. v. Verniero,* 982 F.Supp. 961 (D.N.J.1997) and

*Paul P. v. Verniero,* 170 F.3d 396 (3d Cir. 1999).

## II.

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)).

In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable to the non-moving party. *Pollock v. American Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir.1986). The role of the court is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## III.

■ At the outset, it is important to delineate those issues which are not presently before this Court. It is not currently disputed that plaintiffs have a constitutionally protected privacy interest at stake.[2] In *Paul P.*, the Third Circuit held that plaintiffs had a constitutionally protected, "nontrivial" privacy interest in preventing the disclosure of their home addresses. 170 F.3d at 404. This holding was in congruence with the previous opinion of the New Jersey Supreme Court that "public disclosure of plaintiff's home address does implicate privacy interests." *Doe v. Poritz*, 142 N.J. 1, 84, 662 A.2d 367, 409 (1995).

The present challenge to Megan's Law is not a challenge to the amount or type of information disclosed under the Law or to the scope of notification per se. These issues have been dealt with at length by the New Jersey courts in *Doe* and in the case of *In re Registrant R.F.*, 317 N.J.Super. 379, 722 A.2d 538 (App.Div.1998), and the Attorney General has done an admirable job of applying the statute in a manner which conforms with the holdings in these cases. Plaintiffs here challenge not the substance or scope of notification, but the method of notification. In the present motion and accompanying exhibits, plaintiffs claim that the procedures currently used to distribute Megan's Law notices have failed to prevent the disclosure of confidential information to persons not entitled to that information under the Act.

Plaintiffs argue that, in practice, the current system has failed to prevent the widespread dispersal of confidential information to persons without a "particular need for it." *Paul P.*, 170 F.3d at 406. They argue that the current system of applying and enforcing Megan's Law is flawed because: (1) the Law lacks penalties to deter the unauthorized disclosure of information[3]; (2) there is no uniform requirement

---

**2.** "It is now established that the United States Constitution provides some protection of an individual's privacy." *Fraternal Order of Police v. Philadelphia*, 812 F.2d 105, 118 (3d Cir.1987)(citing *Whalen v. Roe*, 429 U.S. 589, 599–600, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977)). This constitutional right to privacy encompasses two separate interests. One of these is an individual's interest in independence in making certain decisions. The other is an interest in avoiding disclosure of personal information. *Whalen*, at 599–600, 97 S.Ct. 869. The Constitutional protection against disclosure of personal information is not, however, absolute. Courts will uphold such disclosure against Constitutional attack if the government's interest in disclosure outweighs the individual's privacy interests. *United States v.*

*Westinghouse Electric Corp.*, 638 F.2d 570, 577 (3d Cir.1980).

**3.** Plaintiffs claim that there is no credible enforcement mechanism to prevent private citizens from disseminating the confidential information they receive to persons not authorized to receive it. Former Attorney General Verniero has stated that contempt of court provisions in judicial orders are the "principal mechanism" for enforcing the confidentiality provisions of the Law. (Pa11). Plaintiffs point out, however, that contempt of court provisions are only used in half the counties' orders and many judges refuse to enforce such orders because they doubt the Court can assert jurisdiction over the recipi-

that the registration process occur in a setting which protects the registrant's privacy[4]; (3) many counties have inconsistent or unclear rules regarding which school staff members are entitled to receive information concerning Tier 2 offenders[5]; (4) not all counties deliver Tier 3 notices by hand to an authorized adult[6]; and (5) home addresses are included in all Tier 2 notices and are disclosed to all notice recipients despite the fact that this information is not needed by all recipients.

In response to these arguments, defendants point to the procedures currently in place and argue that they are more than adequate to prevent the majority of unauthorized disclosures. Defendants cite several portions of the Attorney General Guidelines which caution against improper disclosure of Megan's Law information.[7] For example, the Guidelines provide that Tier 2 notices given to community organizations and schools "shall caution the recipients against unauthorized dissemination" and suggest that "[i]t should be emphasized that it is the responsibility of the Prosecutors and the Courts to determine who is to receive notices and the methods used to conduct notification." (Pa30). The Guidelines further provide that:

It will be the responsibility of each of these organizations and schools to take appropriate steps to educate and alert those staff members who are charged with the care and supervision of children, emphasizing that this information is intended to assist such staff members in the protection of their charges, not to provide notification to the community at large.

(Pa31–Pa32).

According to defendants, the warnings contained within the Guidelines have been further emphasized by public statements

ents of the Megan's Law notices. Defendants have conceded that the jurisdiction to prosecute these contempt of court sanctions is "an open question." (Defendants' brief, 40). As an alternative, plaintiffs suggest that the Attorney General adopt Guidelines providing that "only those individuals who agree to be subject to the authorizing court's jurisdiction and the contempt of court provisions contained in the court's order are eligible to receive notification." (Plaintiffs' brief, 42).

4. At oral argument, defendants submitted a letter dated January 9, 2000, from Attorney General Farmer to all county prosecutors. The letter indicates that this issue has now been resolved and that the guidelines have been amended to require "all law enforcement chief executives to provide a private area outside of public view for completion of the registration form."

5. Plaintiffs claim that prosecutors in at least eleven counties have advised school principals to notify *all* staff who supervise or care for students as part of their job duties even though the Attorney General Guidelines direct that such information be given only to those employees "regularly in a position to observe unauthorized persons on or near the property of the notified school." (Plaintiffs' brief, 17).

6. According to plaintiffs, only eight counties currently require Tier 3 notifications to be personally served on an adult in their homes.

(Plaintiffs' brief, 15) (referring to defendant County Prosecutors' clarification responses to interrogatories (Pa196–pa219)). Plaintiffs note that two counties allow a flier to be served to a juvenile fourteen years of age or older when an adult is not home, five counties permit a flier to be served when no one is home by putting it in a mailbox or under a door, and four other counties have yet to adopt a policy on serving fliers when an adult is not home. *Id.* at 16. Plaintiffs also note that the Attorney General Guidelines permit students up to the eighth grade to receive the flier at school, in a sealed envelope, and to deliver it to their parents. *Id.* Plaintiffs argue that there should be a uniform rule requiring that service be to an adult resident, in person, in order to reduce the likelihood that unauthorized persons gain access to the information. *Id.* Defendants argue, without citation, that every county prosecutor's office but one provides door-to-door, hand delivery of Tier 3 notices. (Defendants' brief, 36).

7. The Prosecutor of the appropriate county determines the scope and method of notification by employing the guidelines promulgated by the New Jersey Attorney General. *See* Guidelines for Law Enforcement for Notification to Local Officials and/or the Community of the Entry of a Sex Offender into the Community (Pa13).

made by the Attorney General and county prosecutors condemning the publication of Megan's Law information in the news media. For example, defendants refer to a letter from former Attorney General Verniero to members of the media asking them to "act responsibly" when reporting on Megan's Law notifications. (Pa11). In addition, defendants argue that the Attorney General and county prosecutors have devoted significant resources towards increasing "the community's understanding of the purpose of Megan's Law and proper use of the information provided." (Defendants' brief, 16). As an example, defendants note that they have created and distributed a pamphlet entitled "A Citizen's Guide to Megan's Law" which counsels the recipients of Megan's Law notices not to distribute the notices to other members of the community or to take any vigilante actions against the registrants. (Da22). Defendants also argue that "[t]he majority of counties" have conducted training sessions for law enforcement, schools, and community organizations at which "the need for appropriate and responsible treatment and handling of the Megan's Law information" was emphasized. (Defendants' brief, 17–18).

Defendants dispute plaintiffs' contention that there are no credible penalties in place to deter unauthorized disclosures. First, defendants argue that a public servant who improperly distributes Megan's Law information could be prosecuted for official misconduct under N.J.S.A. § 2C:30–2. This statute states that a public servant commits official misconduct when he engages in acts related to his office, but constituting an unauthorized exercise of his official authority, with the purpose of benefitting himself or injuring another. Second, defendants maintain that State and local law enforcement agen-

cies have internal rules and regulations which could be used to charge officers with insubordination if they fail to comply with an order relating to a Megan's Law notification. Third, defendants suggest that official immunity would not protect a public employee or agency from civil liability for violating the provisions of Megan's Law in bad faith or with gross negligence. Finally, defendants note that judges in ten of New Jersey's twenty-one counties routinely include contempt of court language in their court orders to discourage members of the public from disclosing information to unauthorized persons.[8]

Despite these efforts, defendants concede that the names and addresses of Megan's Law registrants are sometimes given to persons without a "particular need" for such information. Defendants state that, "occasionally those who receive Megan's Law notices do provide notification information to other members of the community" and "the press has sometimes been able to obtain notification information." (Defendant's brief, 33).

Plaintiffs have summarized forty-five incidents where confidential information released under Megan's Law was distributed to unauthorized persons.[9] In one such incident, a front-page story was published in the Homes News Tribune which identified an offender as a Tier 3 Megan's Law registrant. (Pa364). The article disclosed the registrant's home address and included a criminal history and photograph. The article even included a map with an arrow pointing to the registrant's home. The following day, eight other newspapers, including the New York Times, published similar articles, several included the registrant's name and address. (Pa367–382). One article quoted the managing editor of the Home News Tribune as saying, "We

---

8. Defendants admit that there "has not been a single contempt action prosecuted for any unauthorized disclosure." (Defendants' brief, 40).

9. In their initial brief, plaintiffs provided forty-seven incidents or examples of improper disclosure of Megan's Law information. In their reply brief, plaintiffs reduced this number to forty-five due to the inadvertent double-counting of two incidents.

put out word that we wanted a flier, and we got one." (Pa367).

Plaintiffs have provided many equally glaring examples where Megan's Law notices were publicly disseminated. In one case, a parent received a flier which was sent home from school with her child. (Pa155). The parent, who was also a principal at a different school, made copies of the Tier 3 notice and distributed it to parents of children who attended the school at which she was employed. The school was outside the scope of the notification authorized by the court. In addition, plaintiffs have noted several incidents where notices were either posted in public places (Pa45, 145, 146, 150, 213, 262), or systematically distributed in neighborhoods not within the scope of notification (Pa145, 212, 264).

Defendants ask the Court to overlook any deficiencies in the current system in light of the compelling purposes served by the Act. However, the procedural safeguards contained within the Attorney General Guidelines are crucial to maintaining the constitutional balance between plaintiffs' privacy interests and the goals of the statute. *See Fraternal Order of Police,* 812 F.2d at 117 ("One of the crucial factors in weighing the competing interests referred to in *Westinghouse* is 'the adequacy of safeguards to prevent unauthorized disclosure.'")(quoting *United States v. Westinghouse Electric Corp.,* 638 F.2d 570, 577 (3d Cir.1980)). If, in practice, these safeguards fail to limit the release of plaintiffs' home addresses to those persons with a statutorily defined need for this information, a different constitutional balance would result.

The Court recognizes that the task assigned to the Attorney General is not an easy one. It is a difficult proposition to place confidential information in the hands of the public and then require them to keep it private, especially information which may have an effect on the safety and well-being of the community. As Defendants note, "given the nature and purpose of the law," people will "on occasion share notification information both in the spirit of the law and, unfortunately, without respect to the promotion of public safety as intended by the Legislature." (Defendants' brief, 42–43).

A system of distributing this information with zero "leakage" to unauthorized persons is, in reality, unattainable. However, the mandate for the Attorney General is not to devise a perfect system, but one calculated to achieve the goals of the statute without unreasonably impinging on the "nontrivial" privacy interests of the plaintiffs. The record before this Court shows that the current system fails to meet this standard. Currently, there is no uniform method of distribution which ensures that, in all twenty-one counties, Megan's Law notices will be distributed in a manner reasonably calculated to get the information to those with "a particular need for it" while avoiding "disclosure to those who have no similar need." *Fraternal Order of Police,* 812 F.2d at 118. The Court finds that the Attorney General Guidelines for distributing Tier 2 and 3 notices unreasonably infringe upon plaintiffs' privacy rights and orders that they be redrafted to reasonably limit disclosure to those entitled to receive it.

Plaintiffs have suggested several alternative safeguards which would help to prevent the improper disclosure of confidential information. Although there may be merit in several of these suggestions, it is not the province of the Court to redraft the Attorney General Guidelines. The Court merely suggests that the new Guidelines create a greater degree of uniformity among the counties in the way in which they distribute Megan's Law information and the penalties they impose for improper distribution.

## IV.

Plaintiffs and defendants both seek orders sealing certain materials submitted in conjunction with their motions.

Plaintiffs ask the Court to seal their brief and volumes II, III, and IV of their appendix. Defendants ask the Court to seal the affidavits of Robert Valdora, Kelly Anne Shelton, Jessica Oppenheim, Barbara Bakley–Marino, and Betsy Phillips. Neither party disputes that the information contained within these briefs and exhibits is confidential, nor that the disclosure of this information will result in a "clearly defined and serious injury to the part[ies] seeking closure." *Miller v. Indiana Hospital,* 16 F.3d 549, 551 (3d Cir.1994)(quoting *Publicker Industries, Inc. v. Cohen,* 733 F.2d 1059, 1071 (3d Cir.1984)). Accordingly, the Court will grant each request; plaintiffs' brief, volumes II, III, and IV of plaintiffs' appendix and the five above-mentioned affidavits will be placed under seal.

## V.

For the reasons set forth above, and because there are no genuine issues of material fact, the Court will grant plaintiffs' motion for summary judgment and deny defendants' cross-motion. The Court will issue an order enjoining the enforcement of Megan's Law until the Attorney General promulgates Guidelines which comply with the holding of this Court. However the Court will temporarily suspend the enforcement of this injunction pending appeal to and decision by the Third Circuit. *See* Fed.R.Civ.P. 62(c). Also, the material outlined in section IV above will be placed under seal. The Court will issue an appropriate order.