772 A.2d 349

IN THE MATTER OF REGISTRANT J.M.

Argued January 30, 2001—Decided March 28, 2001.

*Jessica S. Oppenheim,* Deputy Attorney General, argued the cause for appellant, State of New Jersey *(John J. Farmer, Jr.,* Attorney General of New Jersey, attorney).

*Brian J. Neff,* Designated Counsel, argued the cause for respondent, J.M. *(Peter A. Garcia,* Acting Public Defender, attorney).

The opinion of the Court was delivered by

LaVECCHIA, J.

This is yet another challenge to the *Attorney General Guidelines for Law Enforcement for the Implementation of Sex Offender Registration and Community Notification Laws,* specifically

the Registrant Risk Assessment Scale ("RRAS") and the Registrant Risk Assessment Scale Manual ("Manual") components of those guidelines. Previous challenges to the RRAS and the Manual have been addressed by this Court. *In re Registrant G.B.*, 147 *N.J.* 62, 69, 685 *A*.2d 1252 (1996); *In re Registrant C.A.*, 146 *N.J.* 71, 100–01, 679 *A*.2d 1153 (1996); *Doe v. Poritz*, 142 *N.J.* 1, 24 n. 5, 662 *A*.2d 367 (1995); *see also Paul P. v. Farmer*, 80 *F.Supp*.2d 320, 325 (D.N.J.), *judgment vacated by* 92 *F.Supp*.2d 410, 414 (D.N.J.2000) (dissolving injunction and allowing amended guidelines on uniform method of distribution of community notification to proceed). We have upheld the RRAS, imbuing it with an entitlement to deference, but noting that the ultimate responsibility for determining the extent of community notification is reposed with the trial court, assisted in certain circumstances by expert testimony. *In re G.B., supra*, 147 *N.J.* at 69, 685 *A*.2d 1252.

The RRAS is composed of four categories and, within each, numerous factors. (Appendix A). It is recognized as a useful tool for assessing risk of re-offense of a registrant, designating an individual's tier of risk of re-offense, and the scope of community notification pertinent to that tiered designation. *Ibid.* In this matter, registrant objects to the inclusion under the RRAS's "criminal history" factors one through seven of certain prior convictions for offenses of a sexual nature. Specifically, he contends that if the offense would not require his registration under the Registration and Community Notification Laws, *N.J.S.A.* 2C:7–1 to –11 (RCNL), commonly known as Megan's Law, then it should not be included under factors one through seven of the RRAS that examine criminal offense history. Instead, he asserts that those nonregistrable sex offenses should be limited to consideration only under the "anti-social acts" factor of the RRAS, thus reducing the capacity of those offenses to inflate the assessment of his risk of re-offense. Both the trial court and the Appellate Division agreed and held that registrant's nonregistrable sex offenses could not be considered under the criminal history factors one through seven. We granted certification, 165 *N.J.* 489, 758 *A*.2d 649 (2000), and now reverse.

## I.

Registrant J.M. has an extensive criminal background, but it is his 1966 rape conviction that brings him within the purview of the RCNL. In August 1999, the Essex County Prosecutor served J.M. with notice of intent to designate him a "Tier 3, High Risk, Sex Offender" due to his score of eighty-nine points on the RRAS. The "High Risk" designation would require notification to all public and private educational institutions, licensed day care centers, summer camps, registered community organizations, and specified residential and business addresses. J.M. objected to the proposed "High Risk" classification and counsel was appointed to represent him at a hearing on his tier classification.

At his hearing, J.M. contended the State erroneously considered his 1987 conviction for attempted criminal restraint when evaluating the criminal history factors, numbers one through seven, on the RRAS, culminating in an incorrect score and tier designation. The facts relevant to that conviction were that registrant had been charged with attempted kidnapping in 1986 on the basis of his attempt to abduct a sixteen-year-old girl walking to school. Registrant drove alongside the girl, and while asking for directions, attempted to pull her into the car by grabbing her sleeve. She managed to elude him. The charge was amended to third-degree attempted criminal restraint, to which J.M. pled guilty and received a sentence of five years probation with a mandatory 364–day jail sentence.

J.M. disputed his point assessments for virtually all of the categories on the scale because his 1987 conviction for attempted criminal restraint was included in arriving at those point assessments. For similar reasons, J.M. also objected to his three lewdness offenses being considered under factors one through seven when assessing his risk of re-offense. Although the State argues that J.M. has three past lewdness convictions, we note that that contention is disputed. J.M.'s argument was premised on the fact that the 1987 attempted criminal restraint conviction and his lewdness offenses do not fit within the definition of a "sexual

offense" requiring registration under Megan's Law. *N.J.S.A.* 2C:7–2(b)(2). Because those crimes are not registrable offenses, he argued, they should not be included among the criminal history factors "indicative of high risk of re-offense" under the Attorney General's guidelines for determining the appropriate level of notification for a registrant. *N.J.S.A.* 2C:7–8(b)(3).

The trial court agreed, reasoning that an offense that does not require registration under *N.J.S.A.* 2C:7–2 is not a "sex offense" for purposes of Megan's Law and could be considered only under factor eight of the RRAS, "History of Anti Social Acts." Accordingly, the court reassessed J.M.'s RRAS score, additionally reducing J.M.'s score for reasons not pertinent to this appeal, and held that the State had proven by clear and convincing evidence only a point assessment of fifty-four. J.M. was classified as a "Tier Two" sex offender and, consistent with that moderate risk assessment, the court directed that notification be given to "all secondary public and private educational institutions, registered community organizations and summer camps within a one-half mile of the registrant's residence . . . ."

On appeal, the State argued that the trial court erred in finding that registrant's attempted criminal restraint and various lewdness offenses could not be considered when evaluating J.M.'s risk of re-offense under factors one through seven. According to the State, the Scale takes an "actuarial" or combined experience approach designed to encompass all sexual offense history so as to evaluate more accurately future risk of re-offense, the very purpose underlying the tier classification and resultant scope of notification for each registrant. The State contended that the entire statutory scheme of registration and notification of sex offenders evinces a legislative contemplation that all of an offender's sexual offenses be considered for purposes of tiering, once it is determined that a sex offender is subject to registration under the act. Thus, only by considering all prior crimes with a sexual component as part of a registrant's criminal history will the Scale serve as an accurate predictor of a registrant's risk of recidivism.

That argument was rejected by the Appellate Division in an unpublished decision. The court reasoned that *N.J.S.A.* 2C:7–2 specifically enumerates offenses that are deemed sex offenses "[f]or purposes of this act . . ." and found that attempted criminal restraint and lewdness were not "sex offenses" as defined in *N.J.S.A.* 2C:7–2. Accordingly, the court concluded that the State's contention that a registrant's nonregistrable sexual offenses could be considered under "criminal history" factors in determining the scope of notification conflicted with the express language of Megan's Law.

## II.

The Legislature enacted the RCNL "to protect the community from the dangers of recidivism by sexual offenders." *In re C.A.,* *supra,* 146 *N.J.* at 80, 679 *A.*2d 1153. The Legislature declared that the danger of recidivism posed by sex offenders who commit predatory acts against women and children, and the dangers posed by persons who prey on others as a result of mental illness, require a system of registration that permits law enforcement officials to identify and alert the public when necessary for public safety. *N.J.S.A.* 2C:7–1a; *see also Alan A. v. Verniero,* 970 *F.Supp.* 1153, 1175 (D.N.J.) (stating that Megan's Law was enacted to provide knowledge as measure of self-defense to help protect most vulnerable community members from sex offenders), *vacated,* 135 *F.*3d 763 (3d Cir.1997).

The RCNL sets forth "basically simple" categories of persons subject to registration. *Doe v. Poritz, supra,* 142 *N.J.* at 20, 662 *A.*2d 367. Persons "convicted, adjudicated delinquent or found not guilty by reason of insanity for commission of" sex offenses enumerated in the RCNL, on or after its enactment, must register. *N.J.S.A.* 2C:7–2b(2). The RCNL's registration requirement also reaches certain sex offenders whose offenses pre-date the RCNL if the offender's conduct was found to be "repetitive and compulsive." *N.J.S.A.* 2C:7–2b(1). Succinctly put,

[t]he sex offenses that trigger the laws for those previously convicted are aggravated sexual assault, sexual assault, aggravated criminal sexual contact, kidnapping pursuant to *N.J.S.A.* 2C:13-1(c)(2), and for those convicted after their effective date, added to the foregoing are various laws concerning endangering the welfare of a child, luring or enticing, criminal sexual contact if the victim is a minor, and kidnapping, criminal restraint, or false imprisonment if the victim is a minor and the offender not the parent; and in all cases an attempt to commit any of the foregoing.

[*Doe v. Poritz, supra,* 142 *N.J.* at 20, 662 *A.*2d 367.]

The RCNL further requires notification to the community concerning sex offenders assessed to be at a moderate or high risk to re-offend. *N.J.S.A.* 2C:7-8c(2) and (3). That latter task, namely to establish a methodology for assessing risk of re-offense, was delegated to the Attorney General to implement, informed by the RCNL's enumeration of factors to be included as relevant to the risk of re-offense. *N.J.S.A.* 2C:7-8; *In re C.A., supra,* 146 *N.J.* at 88, 679 *A.*2d 1153.

The Attorney General was directed to consult with an advisory council and thereupon to promulgate guidelines and procedures for community notification. *N.J.S.A.* 2C:7-8a; *see N.J.S.A.* 2C:7-8(d)(providing that "[i]n order to promote uniform application of the notification guidelines ... the Attorney General shall develop procedures for evaluation of the risk of re-offense and implementation of community notification"); *see also Doe v. Poritz, supra,* 142 *N.J.* at 23, 662 *A.*2d 367 (stating that Attorney General is allocated broad powers under RCNL to adopt guidelines binding on law enforcement agencies).

The factors decreed by the Legislature to be relevant to risk of re-offense and therefore to be included within the guidelines the Attorney General was to develop were set forth in the statute:

Factors relevant to risk of re-offense shall include, but not be limited to, the following:

(1) Conditions of release that minimize risk of re-offense, including but not limited to whether the offender is under supervision of probation or parole; receiving counseling, therapy or treatment; or residing in a home situation that provides guidance and supervision;

(2) Physical conditions that minimize risk of re-offense, including but not limited to advanced age or debilitating illness;

(3) Criminal history factors indicative of high risk of re-offense, including:

 (a) Whether the offender's conduct was found to be characterized by repetitive and compulsive behavior;

 (b) Whether the offender served the maximum term;

 (c) Whether the offender committed the sex offense against a child;

(4) Other criminal factors to be considered in determining risk, include:

 (a) The relationship between the offender and the victim;

 (b) Whether the offense involved the use of a weapon, violence, or infliction of serious bodily injury;

 (c) The number, date and nature of prior offenses;

(5) Whether psychological or psychiatric profiles indicate a risk of recidivism;

(6) The offender's response to treatment;

(7) Recent behavior, including behavior while confined or while under supervision in the community as well as behavior in the community following service of sentence; and

(8) Recent threats against persons or expressions of intent to commit additional crimes.

[*N.J.S.A.* 2C:7–8b.]

In compliance with that directive, the Attorney General promulgated guidelines that initially were determined to be deficient, *Doe v. Poritz, supra,* 142 *N.J.* at 24 n. 5, 662 *A.*2d 367, leading to the promulgation of replacement guidelines containing the current RRAS and Manual to guide prosecutors in risk assessment and to promote uniformity in notification. *In re C.A., supra,* 146 *N.J.* at 100–01, 679 *A.*2d 1153. The guidelines were revised in March 2000 in response to a determination by the District Court that there was "no uniform method of distribution which ensures that, in all twenty-one counties, Megan's Law notices will be distributed in a manner reasonably calculated to get the information to those with a 'particular need for it' while avoiding 'disclosure to those who have no similar need.'" *Paul P., supra,* 80 *F.Supp.*2d at 325 (quoting *Fraternal Order of Police v. Philadelphia,* 812 *F.*2d 105 (3d Cir.1987)). In complying with the court's direction, however, the Attorney General did not alter either the RRAS or Manual. *Paul P., supra,* 92 *F.Supp.*2d at 414.

Turning to the development of the RRAS, we note that the Attorney General did convene "a committee composed of mental health experts as well as members of the Law Enforcement

Committee, which drafted [a] Scale and the accompanying Registrant Risk Assessment Manual ... which explains the Scale." *In re C.A., supra,* 146 *N.J.* at 82, 679 *A.2d* 1153 (footnote omitted). The RRAS takes an objective approach in determining an offender's risk of re-offending and, accordingly, establishing the scope of notification. In constructing the RRAS, the Attorney General focused on the "seriousness of the offense should the offender recidivate" and the "likelihood that the offender will recidivate." *Registrant Risk Assessment Scale Manual* at 2–3.

The RRAS is divided into four categories that encompass factors relevant to placing an offender within one of three tiers based upon the future risk of re-offense. Those four categories are (1) seriousness of the offense; (2) offense history; (3) characteristics of offender; and (4) community support. *Id.* at 4. Thirteen factors are distributed among the four categories, incorporating both statutory factors and factors deemed by the Committee to be relevant to the risk of re-offense. *In re C.A., supra,* 146 *N.J.* at 82, 679 *A.2d* 1153; *Registrant Risk Assessment Scale Manual* at 6–10. "In selecting the criteria to be incorporated into the Scale, the statutory requirements set forth in *N.J.S.A.* 2C:7–6 [sic] have been subsumed in the criteria." *Registrant Risk Assessment Scale Manual* at 2; *see In re C.A., supra,* 146 *N.J.* at 88, 679 *A.2d* 1153 (noting that *N.J.S.A.* 2C:7–8b "enumerates certain factors relevant to risk of re-offense that 'shall [be] include[d]' in the guidelines, but provides that the guidelines need 'not be limited to' the enumerated factors").

Pertinent to this appeal are the three factors under the seriousness-of-offense category and the five factors under the offense-history category. The seriousness-of-offense category includes the following factors: (1) degree of force; (2) degree of contact; and (3) age of victim. *Registrant Risk Assessment Scale.* The factors under the offense-history category are (1) victim selection; (2) number of offenses/victims; (3) duration of offensive behavior; (4) length of time since last offense; and (5) history of antisocial acts. *Ibid.*

The RRAS and Manual instruct the prosecutor to rate the offender "Low Risk," "Moderate Risk" or "High Risk" for each factor. Depending on that rating, the offender is attributed a score of 0, 1, or 3, respectively. Because the Attorney General deemed certain categories more important than others in evaluating an offender's risk of re-offense and the seriousness of that future offense should the offender recidivate, the categories are weighted differently. An offender's score for each factor under the seriousness-of-offense category is multiplied by five, whereas the offender's score for each factor under the offense history category is multiplied by three. *Registrant Risk Assessment Scale Manual* at 4–5. The offender's scores for each factor in each category are totaled, and the offender is assigned a tier designation depending on his or her total score. A total score ranging from 0 to 36 results in a low risk or Tier One classification; a score of 37 to 73 results in a moderate risk or Tier Two classification; and a score of 74 to 111 results in a high risk or Tier Three designation. *Registrant Risk Assessment Scale Manual* at 5; *see also In re Registrant C.A., supra,* 146 *N.J.* at 81, 679 *A.*2d 1153 ("All registrants are subjected to at least Tier One notification, which requires registration with law enforcement agencies."). Ultimate responsibility for the scope of notification is reposed with the trial court, which is to determine tier classification and scope of notification following a hearing in which the burden of proof is on the State. *Doe v. Poritz, supra,* 142 *N.J.* at 12, 662 *A.*2d 367; *see also E.B. v. Verniero,* 119 *F.*3d 1077, 1111 (3d Cir.1997) (finding that due process requires clear and convincing standard of proof with burden on the State to determine risk level, geographic area of notice, and to whom notice will be provided).

### III.

Thus far, the Court has upheld critical aspects of the statutory program and its implementation methodology, with qualifications designed to protect constitutional interests without impeding the

legislative goal of predicting risk of re-offense and providing warning to those members of the community vulnerable to the risk that the registrant would recidivate.

> We ... have upheld the legislation requiring sex offenders to register with law enforcement, *N.J.S.A.* 2C:7–1 to –5, and the act requiring law enforcement, in certain circumstances, to notify community groups and individuals of the presence of sex offenders, *N.J.S.A.* 2C:7–6 to –11. More recently, we upheld the Attorney General's sex-offender classification guidelines, known as the Registrant Risk Assessment Scale ("RRAS" or "the Scale").
>
> [*In re G.B., supra,* 147 *N.J.* at 69, 685 *A.*2d 1252 (citations omitted).]

The registrant in *In re C.A.* challenged the construct of the RRAS generally, calling into account its usefulness in reliably predicting risk of re-offense on which the scope of notification depends. *In re C.A., supra,* 146 *N.J.* at 88, 679 *A.*2d 1153. In addition, the registrant challenged his risk assessment score determined by the prosecutor, specifically objecting to the inclusion of those offenses in his criminal history that did not result in a judgment of conviction. *Ibid.*

Regarding the overall challenges to the reliability of the RRAS, the Court analyzed the RRAS's structure. The Scale is divided into "static" categories related to the registrant's prior criminal conduct, specifically "seriousness of offense" and "offense history," and "dynamic" categories evidencing current conditions, namely "characteristics of offender" and "community support." *Id.* at 103–04, 679 *A.*2d 1153. Experts who assisted the Attorney General in the design of the RRAS developed the weighted approach. The Court approved that approach, which places greater emphasis on the static factors relating to past criminal conduct: The Committee's decision to weight the static factors, particularly the Seriousness of Offense category, higher than the dynamic factors is consistent with the majority of scientific literature in this area. *See, e.g.,* Vernon L. Quinsey et al., *Predicting Sexual Offenses, in Assessing Dangerousness,* 114 (Jacquelyn C. Campbell ed., 1995); Joseph J. Ranero & Linda Meyer Williams, *Recidivism Among Convicted Sex Offenders: A 10 Year Follow up Study,* 49 *Federal Probation* 58 (1985); Frank Tracy et al., *Program Evaluation: Recidivism Research Involving Sex Offenders, in the Sexual*

*Aggressor*, 198 (Joanne G. Greer & Irving D. Stuart eds., 1993). Most studies show that the static factors used in the Scale are the best predictors of risk of re-offense. *Ibid.* *Risk assessment experts generally agree that the best predictor of a registrant's future criminal sexual behavior is his or her prior criminal record.* *We emphasize that the focus on prior offenses is not due to any attempt at punishment but is rather a scientific attempt to better protect the public safety from registrants likely to re-offend.* Although the static factors are weighted the highest, the Scale also includes various dynamic factors, such as the registrant's likely response to treatment, residential support, employment/educational stability, and therapeutic support. Those factors were weighted less heavily in the Scale because the scientific literature generally shows that they are not as good predictors of risk of re-offense as are the static factors. *Ibid.* Although the weights assigned to the categories in the Scale have not been scientifically proven to be valid, the State has produced sufficient evidence to convince us that the factors used in the Scale are reliable predictors of recidivism and are weighted in the Scale according to their relative effectiveness as predictors. The greater weight attached to the static categories is in accord with expert opinion on criminal sexual behavior. *Cf. W.P. v. Poritz,* [931 *F.Supp.* 1199, 1222 (D.N.J.1996) (finding that higher weight accorded to past offenses does not violate due process) ].

[*Id.* at 105, 679 *A.*2d 1153 (emphasis added).]

More recent studies continue to demonstrate that static factors, such as offense history, are better predictors of long-term recidivism. R. Karl Hanson & Andrew J.R. Harris, *Where Should We Intervene?* 27 *Criminal Justice & Behavior* 6 (2000) (citing R. Karl Hanson & Monique T. Bussiere, *Predicting Relapse: A Meta Analysis of Sexual Recidivism Studies,* 66 *Journal of Consulting & Criminal Psychology,* 348–362 (1998)).

The Court also approved another weighted aspect of the RRAS's design, which is the emphasis placed on assessment of the seriousness of the prior offenses:

The Scale was therefore appropriately designed so that people who are very likely to recommit their offense, but whose offenses are low in seriousness, *such as exhibitionists,* would not be ranked as high on the Scale as people who commit fewer, but more serious, offenses such as rapists or sexual thrill killers. The Attorney General's decision to include factors in the Scale that relate to the quality or nature of a re-offense is consistent with the RCNL and *Doe v. Poritz.* [*In re C.A., supra,* 146 *N.J.* at 102, 679 *A.2d* 1153 (emphasis added) (citation omitted).]

The Court's reference to "exhibitionists" was not gratuitous. In understanding and approving the RRAS's weighted approach to static factors generally and, then again, with the weighted factor of "seriousness of offense," the Court noted the expert panel's express use of the offense of lewdness in its example of proper weighting when using the RRAS to evaluate risk of re-offense. The expert panel and the Attorney General clearly envisioned prior criminal history to include assessment of, among other sexual offenses, acts of lewdness, adjusting the scoring of such offenses to reflect the panel's view of the lower risk presented by such behaviors even if the registrant were compulsive:

The criteria listed in the "seriousness of offense" category have been given the most weight, to be multiplied by five. The panel's reasoning is twofold. First, it is intended that the violent, predatory offender be rated higher than those who have not committed such offenses. Giving the highest weighting score to the "seriousness of offense" characteristics accomplishes this goal. Second, the panel wishes to have those with lower level offenses, in particular, *lewdness crimes,* such as exhibitionism, rated as lower risk even though the registrant might be quite compulsive, so as to reflect the lower risk of harm to the community. This goal, too, is accomplished by the heavy weighing of these criteria. These goals mirror both the relative severity of statutory penalties as well as the intent of the notification statute itself.

[*Registrant Risk Assessment Scale Manual* at 4 (emphasis added).]

*See also Registrant Risk Assessment Scale Manual* at 6 (setting forth examples of use of criteria: "Degree of Force" detailing Low Risk example to include "offender exposes self to child," and "Degree of Contact" detailing "exhibitionism" as low risk example).

Thus, the Court in *In re C.A., supra,* contemplated lewdness, or exhibitionist offenses, as appropriate for consideration and weighting under all of the criminal history factors of the RRAS. Although not squarely confronted with an argument that such

offenses could not be so considered because they do not fit the RCNL's definition of "sex offenses," the Court's acceptance of the RRAS's design of heavily weighted static factors as best predictors of the risk of re-offense is consistent with our approach to that specific argument now. The RRAS should operate to serve at its optimum in predicting risk of re-offense, for that is the very purpose of the RCNL. The Attorney General and his experts determined that all offenses of a sexual nature are best assessed, when evaluating risk of re-offense, under the various factors of "criminal history," and not confined to the one factor of anti-social acts. To restrict their consideration as registrant would prefer thwarts the design of the RRAS.

Aside from its apparent inconsistency with the Court's approval of the RRAS's design, the registrant's argument is inconsistent with the scope of the Attorney General's delegated authority to devise an assessment tool for use in reliably and uniformly predicting risk of re-offense. In *In re G.B., supra,* 147 *N.J.* at 89, 685 *A.*2d 1252, the Court concluded that the use of nonconviction offenses was intended by the Legislature to be part of the statutory factors of "criminal history" and "other criminal history" that were meant to be considered in the assessment of risk of re-offense. *See N.J.S.A.* 2C:7–8b(3) and (4). Even if not perceived to fall within the reasonable contemplation of those statutorily identified factors, the Court determined that including information concerning nonconviction offenses was within the scope of the Attorney General's delegated power, which was not limited to consideration of only enumerated factors. *Ibid.* The Attorney General's decision to include such information in the scale was within that delegated discretion so long as the Attorney General's exercise of discretion did not plainly transgress the statute. *Ibid.*

We are unpersuaded that the legislative reference in *N.J.S.A.* 2C:7–2b, stating that "for purposes of this act a sex offense shall include the following," was meant to constrain the Attorney General in his construction of a tool for use by law enforcement agencies in reliably predicting risk of re-offense by a sex offender.

We are inclined to take a less restrictive approach with RRAS. The Attorney General and his consulting experts had a difficult task assigned to them. The Legislature did not prescribe to the Attorney General an exhaustive list of factors to be used, as noted in *In re C.A., supra.* It allowed the administering agent, the Attorney General, and his experts, latitude in bringing their expertise to bear in determining what factors are more or less reliable in helping to predict risk of re-offense. *See N.J.S.A.* 2C:7–8b (stating "factors relevant to risk of re-offense shall include, but not be limited to, the following...."). Indeed, the section of the statute concerning notification refers generally to both "sex offense" and "offense" signaling a breadth of information available to the Attorney General to use and weigh accordingly. *N.J.S.A.* 2C:7–8b(3). Other language in that section also supports the conclusion that the Attorney General was not prohibited from determining that nonregistrable sexual offenses are best evaluated, for purposes of assessing risk of re-offense, under the registrant's "criminal history" on the RRAS. *N.J.S.A.* 2C:7–8a provides that the "guidelines shall identify factors relevant to the risk of re-offense" and some relevant factors that shall be included are "[c]riminal history factors indicative of high-risk of re-offense;" "[w]hether the offender's conduct was found to be characterized by repetitive and compulsive behavior;" and "[t]he number, date and nature of prior offenses." *N.J.S.A.* 2C:7–8b. That language suggests that flexibility be afforded to the Attorney General to review comprehensively a registrant's past sexual offense history, not just registrable sex offenses, when judging the registrant's risk of re-offense. Reading the definition of "sex offenses," contained not in a general definitional section of the RCNL, but rather in the section specifying to whom the registration requirement will apply, as controlling the Attorney General in his construction of a RRAS to reliably assess risk of re-offense, defies common sense and thwarts the community protection purpose of the RCNL.

Furthermore, we must not lose sight of the fact that originally the Legislature passed a series of separate acts, all collectively

known as "The Registration and Community Notification Laws." The registration requirement, wherein the "for purposes of this act" language appears, is contained in the piece of legislation enacted as *L.* 1994, *c.* 133. The legislation containing the requirement for the creation of notification guidelines, and the factors the Attorney General was to use, was enacted as *L.* 1994, *c.* 128. Those separate, but obviously complementary, enactments require sensible application consistent with the Legislature's overarching intent to protect the citizenry. *Sutherland Statutory Construction* § 46:05 at 154 (6th ed.2000)(stating that statute's overall scheme is to be considered, and its various parts animated by one general purpose and intent); *Kimmelman v. Henkels & McCoy, Inc.,* 108 *N.J.* 123, 129, 527 *A.*2d 1368 (1987) (finding that court should not consider only specific statute in question, but rather should consider entire legislative scheme of which it is part).

*N.J.S.A.* 2C:7–2b does set forth those offenses that the term "sex offenses" shall include "for purposes of the act." Lewdness and attempted criminal restraint where the conviction occurred before the enactment of the RCNL are not included. *N.J.S.A.* 2C:7–2, however, concerns the "Registration of Sex Offenders," and thus we read that section only as precluding consideration of either of those offenses to require registration. We will not import from that section a restriction on the Attorney General in determining how to assess past criminal conduct of a sexual nature when assessing risk of re-offense.

The Legislature balanced the public interest with that of registrants when determining which offenders would have to register under *N.J.S.A.* 2C:7–2. *See Doe v. Poritz, supra,* 142 *N.J.* at 20, 662 *A.*2d 367 (stating that it has never been explained or challenged why certain offenders, but not others, must register under the act). However, once it has been determined that an offender must register, the analysis changes. *Id.* at 14, 662 *A.*2d 367 (stating that Megan's Law has two basic provisions, to register certain offenders, and secondly to notify the public of "the scope of that notice measured by the likelihood that such offender will

commit another offense"). The registrant's past offenses that include a sexual component are relevant in assessing the registrant's risk of re-offense.

 Under *N.J.S.A.* 2C:7–2, this registrant's 1987 conviction for attempted criminal restraint would have required him to register under Megan's Law but for the fact that the conviction occurred before the effective date of Megan's Law. Once it was determined, however, that petitioner was subject to registration under the RCNL by virtue of his rape conviction, his 1987 attempted criminal restraint conviction as well as his past lewdness convictions play a different, yet important, role in assessing registrant's risk of re-offense. Consideration of past crimes of a sexual nature is crucial to understanding a registrant's propensity to use force or target children, as well as understanding the registrant's duration of offensive behavior, number of victims, and length of time since his last offense. That information that aids in the assessment and design of the proper scope of notification is abundantly relevant to the protection of the public.

Thus, it was entirely reasonable for the Attorney General and his experts to determine that sexual offenses in a registrant's past require assessment through the prism of the seven factors that examine past criminal history from several aspects, such as degrees of force, contact, age of victim, victim selection, and length of time since last offense. The one factor focusing on anti-social acts does not, as fully, examine a past sexual offense episode.

 Registrant's several lewdness offenses also deserve similar examination to discern their appropriate value when assessing his risk of re-offense. *N.J.S.A.* 2C:14–4c provides that " 'lewd acts' shall include the exposing of genitals for the purpose of arousing or gratifying the sexual desire of the actor or any other person." A failure to consider those offenses under the seven "criminal history" factors undermines the evaluation of his compulsion, repetitiveness, and victim choice to determine the scope of notification that should be provided. Fundamentally, it would thwart the remedial objective of Megan's Law not to evaluate those

offenses under the more complete analysis of the criminal history factors of the RRAS, as it was designed to do. *Doe v. Poritz, supra,* 142 *N.J.* at 13, 662 *A.*2d 367; *N.J.S.A.* 2C:7–1. Accordingly, we conclude that the RCNL does not prohibit the Attorney General from concluding that nonregistrable sexual offenses are best evaluated on the RRAS under the criminal history factors of numbers one through seven. Such past criminal conduct need not be restricted to the single factor of "anti-social acts."

### IV.

The assessment of registrant's risk of re-offense was flawed by the lower courts' disallowance of consideration of his 1987 conviction for attempted criminal restraint and his three lewdness offenses under criminal history factors one through seven, and therefore the matter must be remanded. Because there is a factual dispute concerning the lewdness offenses, the court also will have to address whether the State can satisfy its burden of proof under *In re C.A., supra,* when considering those offenses. The matter is reversed and remanded for further proceedings consistent with this opinion.

*For reversal and remandment*—Justices STEIN, COLEMAN, LONG, LaVECCHIA, and ZAZZALI—5.

*Opposed*—None.

# APPENDIX A

## REGISTRANT RISK ASSESSMENT SCALE

| Criteria | Low Risk | 0 | Moderate Risk | 1 | High Risk | 3 | Comments | Total |
|---|---|---|---|---|---|---|---|---|
| **Seriousness of Offense x5** | | | | | | | | |
| 1. Degree of Force | no physical force; no threats | | threats; minor physical force | | violent; use of weapon, significant victim harm | | | |
| 2. Degree of Contact | no contact; fondling over clothing | | fondling under clothing | | penetration | | | |
| 3. Age of victim | 18 or over | | 13-17 | | under 13 | | | |
| | | | | | | | Subtotal: | |
| **Offense History x3** | | | | | | | | |
| 4. Victim Selection | household/family member | | acquaintance | | stranger | | | |
| 5. Number of Offenses/ Victims | first known offense/victim | | two known offenses/victims | | three or more offenses/victims | | | |
| 6. Duration of Offensive Behaviour | less than 1 year | | 1 to 2 years | | over 2 years | | | |
| 7. Length of Time Since Last Offense | 5 or more years | | more than 1 but less than 5 years | | 1 year or less | | | |
| 8. History of Anti-Social Acts | no history | | limited history | | extensive history | | | |
| | | | | | | | Subtotal: | |
| **Characteristics of Offender x2** | | | | | | | | |
| 9. Response to Treatment | good progress | | limited progress | | prior unsuccessful treatment or no progress in current treatment | | | |
| 10. Substance Abuse | no history of abuse | | in remission | | not in remission | | | |
| | | | | | | | Subtotal | |
| **Community Support x1** | | | | | | | | |
| 11. Therapeutic Support | current/ continued involvement in therapy | | intermittent | | no involvement | | | |
| 12. Residential Support | supportive/ supervised setting, appropriate location | | stable and appropriate location but no external support system | | problematic location and/or unstable; isolated | | | |
| 13. Employment/ Educational Stability | stable and appropriate | | intermittent but appropriate | | inappropriate or none | | | |
| | | | | | | | Subtotal: | |
| | | | | | | | Total. | |

Scoring: Highest possible total score = 111
Low Range: 0-36 Moderate Range: 37-73 High Range: 74-111