543 A.2d 1068

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**William HOLLAND, Appellant.**

Supreme Court of Pennsylvania.

Argued Dec. 8, 1987.

Decided May 20, 1988.

408

Norris E. Gelman, Philadelphia, for appellant.

Gaele McLaughlin Barthold, Deputy Dist. Atty., Ronald Eisenberg, Chief, Appeals Div., Helen Kane, Philadelphia, Robert A. Graci, Chief Deputy Atty. Gen., Harrisburg, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

On June 12, 1985, in a trial by jury in the Philadelphia Court of Common Pleas, the appellant, William Holland, was found guilty of burglary, robbery, attempted deviate sexual intercourse, and murder of the first degree. In connection with the murder conviction, a separate sentencing hearing was held, as required by 42 Pa.C.S.A. § 9711, and appellant was sentenced to death. The instant direct appeal ensued.

## I. BACKGROUND

The incident from which the convictions arose was one in which a seventy-one year old woman was viciously assaulted by a burglar in her home. Specifically, on August 11, 1984, at approximately 5:30 A.M., the victim's ground floor apartment in the Northeast section of the City of Philadelphia was forcibly entered through a window screen. Upon entry, the burglar ripped the telephone cord from the wall and proceeded to the victim's bedroom. A bizarre and brutal attack followed. Over a period of time, the victim was stripped, tied about the wrists and legs with a venetian blind cord, stabbed numerous times with an onion peeler and another knife, jabbed with straight pins about her feet, and sexually assaulted. The apartment was ransacked, and a small amount of money was taken. A neighbor, upon hearing the victim's cries for help, summoned the police. Two patrol cars soon arrived at the scene, whereupon one of

the police officers saw a man fleeing from beside the apartment building. The officer did not, however, succeed in apprehending the man at that time. Appellant was arrested and charged with the crime three days later. The victim died two weeks after the crime as a result of the injuries sustained.

## II. TRIAL

■ Appellant has not challenged the sufficiency of the evidence supporting his conviction for murder of the first degree. However, in *Commonwealth v. Zettlemoyer,* 500 Pa. 16, 26 n. 3, 454 A.2d 937, 942 n. 3 (1982), cert. denied, 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983), we established that in each death penalty case a determination would be made by this Court as to whether there was sufficient evidence to sustain the conviction for murder of the first degree. In the instant case, the evidence of appellant's guilt is sufficiently strong as to leave no question that guilt has been established beyond a reasonable doubt.

The evidence linking appellant to the crime consisted of, inter alia, the following. The police officer who was summoned to the crime scene and saw a man beside the victim's apartment building made a positive in-court identification of the man as appellant, and testified that the man ran away as soon as a police searchlight was aimed at him. The identification was based upon the officer's observation of the man for twenty seconds in the light of dawn, as well as light from the searchlight, at a distance of thirty feet. The observation included a frontal view of the man's face. At the time of the incident the officer described the man as a white male, of thin build, approximately 5'8" to 5'10" in height, with a receding hairline. That description corresponded to one later given by the victim, who described her attacker as a white male, of slight build, approximately 5'7" to 5'9" in height, wearing a mask.

A resident of an apartment building near the one where the attack occurred contacted police regarding the incident

and supplied information leading police to believe that an individual known to the resident as "Bill" could be regarded as a suspect. The resident reported that, just hours before the crime in question, she saw "Bill" looking through her apartment window. She told police that "Bill" resided in an apartment building behind that of the victim, and described "Bill" as a white man, weighing 140 pounds, approximately 5'7" to 5'9" in height, with a receding hairline. Plainclothes police officers went to the apartment building to examine the mailboxes, hoping to learn the surname of "Bill." While examining the mailboxes, one of the officers was approached by appellant, and appellant inquired about the officer's purpose in being there. The officer, realizing that appellant matched the description of "Bill," said he was looking for another individual, and gave as the name of the individual a name randomly selected from the mailboxes. Appellant offered to go and get the individual, but then disappeared behind a locked door and fled from the scene. The plainclothes officers gave pursuit, identifying themselves as police officers and ordering appellant to stop. Appellant ignored their commands, however, and escaped.

Subsequent investigation revealed that "Bill" was actually named William Holland, appellant herein, and that appellant resided in the apartment building with his mother. On August 14, 1984, three days after the crime, appellant was located by police at the nearby home of his grandmother. Appellant voluntarily accompanied police to a police station and made a number of incriminating statements, including two confessions that were later introduced at trial. The confessions included very detailed and complete admissions as to appellant's role in the crime. Based upon this evidence, it is clear that appellant's guilt has been established beyond a reasonable doubt.

■ The first issue raised in this appeal concerns the trial court's instruction to the jury regarding the voluntariness of the confessions introduced into evidence. It is alleged that trial counsel was ineffective for failing to object to the instruction on voluntariness, inasmuch as it did not include

elements such as the burden of proof as to voluntariness, the duty to disregard statements involuntarily issued, etc. The charge given by the court was as follows:

There was some talk, too, about the statement that was given. Of course, a statement must be voluntary. Now, to be voluntary, a defendant's statement must be the product of an essentially free will and choice after being warned of his rights. If a defendant's will and ability to choose are overborn by physical or mental pressure, any statement which he then makes would be then involuntary.

There is no need, however, to discuss this charge in detail, for the circumstances of this case are such that no charge on voluntariness was required. Thus, any alleged inadequacies in the charge were necessarily of an inconsequential nature. Examination of the record reveals that the trial court provided the instruction relating to voluntariness merely as a comment upon some of the matters mentioned in counsel's arguments to the jury, rather than on grounds there was evidence in the record placing the question of voluntariness before the jury.

It is axiomatic that a jury need not be instructed regarding matters that have no relevance to the evidence introduced at trial. As stated in *Commonwealth v. Whiting*, 409 Pa. 492, 498, 187 A.2d 563, 566 (1963), "There is no duty on a trial judge to charge a jury upon law which has no applicability to the presented facts. There must be some relationship between the law upon which an instruction is required and the evidence presented at the trial: *Commonwealth v. Coleman*, 402 Pa. 238, 166 A.2d 525 (1961)." See also *Commonwealth v. Tervalon*, 463 Pa. 581, 593, 345 A.2d 671, 678 (1975); *Commonwealth v. Bighum*, 452 Pa. 554, 559, 307 A.2d 255, 258 (1973); *Commonwealth v. Heckathorn*, 429 Pa. 534, 540, 241 A.2d 97, 100 (1968) ("A charge on a point or issue which is unsupported by any evidence is likely to confuse the jury and obstruct Justice.")

Certainly, if appellant had a basis for challenging the voluntariness of his confessions, evidence could have been

introduced at trial placing the issue of voluntariness before the jury, even though a suppression court had previously ruled the confessions admissible. *Commonwealth v. Motley,* 472 Pa. 421, 429, 372 A.2d 764, 768 (1977); *Commonwealth v. Coach,* 471 Pa. 389, 394, 370 A.2d 358, 361 (1977). In the instant case, however, the record simply did not contain anything providing a basis for belief that the confessions were involuntary.

At trial, the Commonwealth introduced extensive testimony regarding the circumstances under which appellant confessed to the crime. According to that testimony appellant voluntarily accompanied officers to the police station, whereupon he was fully informed of his constitutional rights and proceeded to admit his guilt, under circumstances that provided not even a trace of coercion. The sole basis relied upon by appellant in asserting that a full instruction on voluntariness should have been given is the fact that trial counsel argued to the jury that the confessions were not voluntarily given. Counsel's arguments, however, cannot be employed to create trial issues for submission to the jury, when the issues lack any basis in the record.

Trial counsel's argument in this case, insofar as it addressed the matter of voluntariness, was based solely upon one fact. Specifically, earlier in the day on which appellant issued his confessions, before appellant was located by police, appellant's mother spoke on the telephone with her other son, who happened to be a police officer in the same district where the crime occurred. She told him that police had been to her apartment in connection with an investigation of the crime in question, with reference to appellant's possible involvement. In response, he expressed concern for his brother, the appellant, and told his mother that if appellant continued to run from police, the consequence could be that appellant would eventually be injured or shot. There is *no* evidence that the possibility of such a consequence was ever communicated to appellant. Further, when appellant arrived at the police station where he subse-

quently issued his confessions, his brother was there but said nothing to him, other than perhaps "hello," and refrained from being present while appellant spoke to the other officers. In short, there is not a scintilla of evidence that the expression of concern by appellant's brother related in any way to the confessions obtained. Under the circumstances, there was no basis in the record to support charging the jury on the voluntariness of the confessions. Trial counsel was not, therefore, ineffective for failing to object to the charge, inasmuch as a charge relating to voluntariness would have been without proper foundation in the record. See *Commonwealth v. Webb*, 491 Pa. 329, 421 A.2d 161 (1980) (where the underlying claim is without basis, counsel's failure to pursue it will not be deemed ineffectiveness).

The next contention raised by appellant is that trial counsel was ineffective for failing to object to testimony by police officers indicating that appellant's confessions were voluntary. Specifically, two police officers testified regarding the circumstances under which the confessions were obtained, describing in detail matters such as appellant's behavior, the conduct of the officers who were present, the manner in which appellant was informed of his constitutional rights, etc. After testifying to these matters, each officer was asked whether the confessions were the product of appellant's free will. Both officers gave their opinions that the confessions were indeed the product of free will. Appellant claims trial counsel was ineffective for failing to object to such questions, asserting that the questions called for improper opinion testimony.

■ Examination of the record reveals that trial counsel did in fact object when such a question was first posed to one of the officers, but the objection was overruled. It is clear, however, at least with respect to questioning of the other officer, that no objection was made. Nevertheless, as discussed supra, the voluntariness of appellant's confessions was never validly placed at issue during the instant trial. The opinions of the police officers, therefore, consti-

tuted opinions of lay witnesses on a matter *not in issue,* and, consequently, the opinions were necessarily harmless in their effect. See generally *Kozak v. Struth,* 515 Pa. 554, 531 A.2d 420, 424 (1987) (limiting opinion testimony on issues of ultimate fact); *Catina v. Maree,* 498 Pa. 443, 450–451, 447 A.2d 228, 232 (1982) (restricting lay opinions pertaining to critical issues); *Commonwealth v. Norris,* 498 Pa. 308, 317–318, 446 A.2d 246, 250–251 (1982) (alleged error in admission of evidence regarded as harmless where it would not have affected the verdict). Thus, without regard to whether the challenged opinion testimony was proper, it is clear that appellant was not prejudiced thereby. Without a showing of prejudice attributable to counsel's alleged ineffectiveness, relief cannot be afforded. *Commonwealth v. Pierce,* 515 Pa. 153, 161–62, 527 A.2d 973, 976–977 (1987).

The next assertion of trial counsel's ineffectiveness arises from the fact that counsel did not object to a jury instruction that explained the role of expert witnesses. It is alleged that the jury may have understood the instruction to mean that the officers who testified with respect to the voluntariness of appellant's confessions were to be regarded as expert witnesses. Such a contention is patently without merit. The instruction in question consisted of the following:

Witnesses can't give opinions. There is an exception to that and it is called the expert witness rule.

A general rule is that a witness can testify only about what they saw or heard. He can't give an opinion or draw conclusions. Now, an expert witness is one who by training, education, experience, has acquired a special level of skill in some art, some science, profession or calling and by virtue of that special skill or knowledge he is permitted to give explanations and draw inferences not within the range of ordinary experience.

Now, in deciding whether or not to accept this expert's opinion, you must consider the evidence as to his training, education, experience as well as the reasons and facts

upon which his opinions are based. *The persons who testified here who were expert witnesses were, I think, Marvin Jenkins, who is a crim lab technician. Dr. Juarez from the Nazareth Hospital. Dr. Fillinger, the forensic pathologist, Miss Scafidi, Dr. Tumosa and Dr. Bonovitz.*

(Emphasis added). In view of the trial court's express instruction enumerating the individuals who were to be considered expert witnesses, none of whom included police officers that testified about the circumstances of appellant's confessions, there is no possibility that the jury was misled to believe that the officers were to be considered expert witnesses.

## III. DEATH SENTENCE

Appellant contends that certain prospective jurors were improperly challenged for cause and excluded from the panel on the basis of their beliefs as to capital punishment, and, thus, that the sentence of death should be vacated. Specifically, it is alleged that during the portion of the jury selection process in which jurors are questioned regarding their willingness and ability, in an appropriate case, to render a verdict calling for imposition of the death penalty, to wit, the "death qualification" phase, three of the prospective jurors were excluded without having expressed sufficient reservations about their ability to apply the law governing imposition of the death penalty. We do not agree.

■ It is well settled that a prospective juror may be excluded for cause when his views on capital punishment are such as would "prevent or *substantially impair* the performance of his duties as a juror in accordance with his instructions and his oath." *Wainwright v. Witt,* 469 U.S. 412, 424, 105 S.Ct. 844, 852, 83 L.Ed.2d 841, 851–852 (1985) (emphasis added). See also *Darden v. Wainwright,* 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144, 154 (1986); *Commonwealth v. Smith,* 511 Pa. 343, 351, 513 A.2d 1371, 1375 (1986). Examination of the record of the instant jury selection proceeding reveals an ample basis for the trial court's

findings that the three individuals in question would have been, as a result of their preconceived beliefs or attitudes, "substantially impaired" in the performance of their duties as jurors.* It is to be noted, too, that the trial court was in

* The record of voir dire, with respect to the three individuals who were excluded from the jury panel on the basis of their beliefs or attitudes, contains the following:

### First Potential Juror

PROSECUTOR—If you find it is a first-degree murder case, you have to decide whether it is life or death.

A—It will probably be very hard for me to decide for the death penalty.

PROSECUTOR—Now, is that because of some religious, moral or philosophical beliefs?

A—It is the way I would feel.

DEFENSE COUNSEL—I would object to the question once again, Your Honor.

COURT—It may be very hard. It would be hard for anyone. But could you do it in the proper case where the law expected you to return the death penalty? Or do you have any religious or philosophical beliefs that would prevent you from voting for it?

A—Yes, according to my religion, it would be very hard.

COURT—Pardon me?

A—According to my religion, I am a Catholic, it would be very hard for me.

COURT—I know it would be hard.

A—I couldn't guarantee I would make the correct decision.

COURT—All right, we will excuse her.

### Second Potential Juror

PROSECUTOR—Are you confident that if the law required it and the facts as you found them in your deliberations were such, that you could find that the appropriate sentence in this case would be the death penalty?

A—Yes.

PROSECUTOR—After you decide the sentencing phase of the case, you will come back into the courtroom again to announce your verdict on sentencing. Do you understand that?

A—Yes.

PROSECUTOR—At that point, do you think that you could stand up in open court, face the defendant by yourself and announce your verdict of the death penalty?

A—I am not too sure about that.

PROSECUTOR—That is one of the important things you have to do as a juror if selected. Do you think you would have a problem standing up and facing another human being and essentially sentencing him to death? Please be honest with us.

A—Yes.

PROSECUTOR—In that case, you would feel uncomfortable sitting as a juror in this case, because of that aspect of the case; is that correct?

a position to assess the demeanor of the individuals, such being a relevant consideration in determining whether they would be able to perform their duties as jurors. See *Darden v. Wainwright*, 477 U.S. at 178, 106 S.Ct. at 2470, 91 L.Ed.2d at 155; *Commonwealth v. Williams*, 514 Pa. 62, 68–70, 522 A.2d 1058, 1061–1062 (1987) (trial court's ruling on a challenge for cause, based upon prospective juror's answers and demeanor during voir dire, will not be reversed absent a palpable abuse of discretion).

■ Further, although trial counsel objected when two of the three prospective jurors in question were excluded for cause, it is clear that one of the three was excluded without objection from counsel. Appellant alleges, therefore, that trial counsel was ineffective for failure to object. Counsel's action cannot be deemed ineffective and prejudicial, however, where the record, as here, provides no basis for

A—Yes.
PROSECUTOR—Cause, Your Honor.

*Third Potential Juror*

PROSECUTOR—My question for you, ma'am, is do you have any religious, moral or philosophical beliefs that would prevent you from voting for the death penalty in the appropriate case under the law?
A—I do not believe in the death penalty.
COURT—Could you impose the death penalty if the law required it?
A—I really don't know.
COURT—Pardon me?
A—I couldn't say. I don't know.
COURT—You could not put aside your feelings about the death penalty and impose it if the evidence was clear and the law was clear?
A—I never served before and I don't know what this is all about.
COURT—That may be true. But I am asking you, could you put aside your personal beliefs and impose the death penalty if it were appropriate and the law said it was appropriate?
A—If the law says, yes.
COURT—You cannot say with certainty then, can you?
A—If that was the law, you said?
COURT—Yes. If the law says this case demanded the death penalty, requires the death penalty. Could you impose the death penalty?
PROSECUTOR—Be honest with us.
A—It is so hard because I believe in putting a person in prison. But so far, I never heard a case and I don't know what my feelings would be.
PROSECUTOR—I challenge for cause.

finding that the prospective juror was erroneously excluded. See generally *Commonwealth v. Webb*, supra; *Commonwealth v. Pierce*, supra.

■ The next contention raised by appellant is that the trial court erred in instructing the jury at the sentencing hearing with regard to the manner in which aggravating and mitigating circumstances were to be considered, and, thus, that trial counsel was ineffective for failing to object to the charge. The sentencing statute provides that, if the jury finds one or more of the aggravating circumstances enumerated in the statute to be present, and at the same time finds one or more of the enumerated mitigating circumstances to be present, then the jury must return a sentence of death if the aggravating circumstances "outweigh" the mitigating circumstances. 42 Pa.C.S.A. § 9711(c)(1)(iv). In instructing the jury on this aspect of the sentencing statute, the trial court committed an error. Instead of instructing that aggravating and mitigating circumstances were to be "weighed," which would permit qualitative considerations to be taken into account, the court instructed that a quantitative approach should be applied. Specifically, the court informed the jury that the sentence should be death if there were "more" aggravating circumstances than mitigating circumstances.

The instruction was, indeed, erroneous, but it is clear that appellant would have suffered no prejudice thereby. The jury in this case found three aggravating circumstances and *no* mitigating circumstances. Thus, there were no mitigating circumstances to be "weighed" against aggravating circumstances, and, accordingly, any error in instructing the jury as to the manner in which a "weighing" process should be conducted was necessarily harmless. Cf. *Commonwealth v. Morales*, 508 Pa. 51, 494 A.2d 367 (1985) (death penalty need not be vacated where deficiencies at sentencing stage would not have prejudiced the defendant). In short, this is a case where a sentence of death was plainly required by the sentencing statute, and considerations involving "weighing" were simply not relevant. When one or

more aggravating circumstances are present, and no mitigating circumstances are found, a jury is *required* to return a verdict of death. 42 Pa.C.S.A. § 9711(c)(1)(iv).

■ Further, we find no merit in appellant's argument that the defective instruction on "weighing" could have caused the jury to refrain from conducting any deliberations on the question of whether mitigating circumstances were present. In essence, appellant contends that once the jury determined that three aggravating circumstances were present, it may have ceased deliberations in the belief that there was no possibility of finding three or "more" mitigating circumstances. However, the question of whether mitigating circumstances are present is separate and apart from the question of whether, once they are found to exist, the mitigating circumstances are sufficient to prevail over the aggravating circumstances. The record shows that the jury was thoroughly and competently instructed on the subject of what would constitute mitigating circumstances, and there is no reason to believe that the instructions on that subject were ignored. To no extent did the instructions convey an impression that mitigating circumstances were not to be reported if the aggravating circumstances were such as to result in a sentence of death. Further, in announcing the verdict, the jury foreman expressly stated the jury's finding that *no* mitigating circumstances were present. Thus, we find no basis to believe that the jury failed to conduct deliberations on the subject of mitigating circumstances.

■ The aggravating circumstances found in this case were that appellant "committed a killing while in the perpetration of a felony," 42 Pa.C.S.A. § 9711(d)(6), that the "offense was committed by means of torture," 42 Pa.C.S.A. § 9711(d)(8), and that appellant "has a significant history of felony convictions involving the use or threat of violence to the person," 42 Pa.C.S.A. § 9711(d)(9). We have examined the record, and, in view of the factual circumstances of this crime, described supra, and the fact that appellant has been convicted of numerous robberies involving threatened use

of a gun in the past, it is clear that the evidence establishes the relevant aggravating circumstances beyond reasonable doubt. It cannot be said, therefore, that the evidence fails "to support the finding of an aggravating circumstance specified in subsection (d)." 42 Pa.C.S.A. § 9711(h)(3)(ii).

With regard to the jury's finding that none of the mitigating circumstances specified in 42 Pa.C.S.A. § 9711(e) were present, a review of the record reveals that the defense offered little in the nature of evidence of mitigating circumstances. Testimony from appellant's mother and grandmother indicated that appellant had, years previously as a child, been troubled with loneliness and nervousness, and that he was basically a good and helpful child who started to get in trouble as he got older, and that appellant never met with much acceptance or success in life. At the time of the instant crime, appellant was approximately twenty-six years of age. The testimony indicated that, during his life as an adult, appellant had never been successful in gaining employment, due to his prison record. One of appellant's friends testified, too, stating that appellant had been good to her and expressing her hope, therefore, that appellant would not be put to death. Thus, the evidence offered on appellant's behalf was directed primarily at an attempt to prove the mitigating circumstance set forth in 42 Pa.C.S.A. § 9711(e)(8), consisting of "evidence of mitigation concerning the character and record of the defendant and the circumstances of his offense."

■ It is alleged by appellant that the trial court's charge improperly limited the factors that could be considered as mitigating, that trial counsel was therefore ineffective for failing to object to the charge, and that the alleged defect in the charge caused the jury to find that no mitigating circumstances were present. We do not agree. The charge informed the jury that an issue to be considered was "whether the killing in this case was accompanied by aggravating or mitigating circumstances," and it described the verdicts that should be rendered, based upon whether the crime was "accompanied" by various combinations of

aggravating and mitigating circumstances. The charge then instructed the jury to determine "what circumstances caused this killing." Appellant contends that there may have been circumstances that did not play a causative role in the killing, but which nevertheless "accompanied" the killing, and that such circumstances would not have been considered by the jury as a result of the manner in which the charge was phrased. We are not convinced that, when read as a whole, the charge did have that effect, but, even assuming arguendo that the charge focused the jury's attention on causative factors, the record of the instant case provides no basis for belief that appellant was prejudiced.

Appellant has not specified or even suggested any mitigating circumstances, of a non-causative nature, that might have been supported by the record in this case. Indeed, appellant's brief for the present appeal merely argues that the charge improperly burdened appellant with respect to "whatever" mitigating circumstances he was trying to establish. An examination of the record reveals no basis for finding that the defense met its burden of proving the existence of non-causative mitigating circumstances. See 42 Pa.C.S.A. § 9711(c)(1)(iii) ("[M]itigating circumstances must be proved by the defendant by a preponderance of the evidence.") Testimony offered by the defense at the sentencing hearing focused almost exclusively upon appellant's background, and was offered for the inference that appellant's troubled background was a causative factor in the instant crime. Although appellant's mother, grandmother, and another friend indicated that they hoped appellant would not be put to death, their hopes alone certainly did not constitute evidence of mitigating circumstances. Thus, we do not believe that appellant could have been prejudiced by the charge, even if the charge was understood by the jury as emphasizing circumstances having a causal relationship to the crime.

The next issue raised in this appeal concerns the propriety of a certain portion of the prosecutor's closing argument at the sentencing hearing. During his summation, the

prosecutor commented as follows regarding witnesses called by the defense at the hearing:

[H]e called his mother and he called his grandmother, which is perfectly understandable. If any of you were in the kind of trouble that he was in, I expect that you would call your mother and grandmother. Something is very interesting to note about what happened when they took the stand. Both of them looked at the sons of [the victim] sitting in the first row and cried and said I'm sorry, I am terribly sorry what happened to you. But has any of you heard any remorse from Mr. Holland in this case? Has any of you seen a tear in his eye? Has he expressed the least bit of remorse for what he did to [the victim]?

Appellant did not testify at the guilt or penalty phases of trial. It is alleged, therefore, that the latter portion of the prosecutor's comment, which noted the lack of any expression of remorse from appellant, constituted improper comment infringing appellant's right not to testify at the sentencing hearing.

■ It is established, however, that the demeanor of a defendant, including his apparent remorse, is a proper factor to be considered by a jury in the sentencing phase of a capital case. *Commonwealth v. Travaglia*, 502 Pa. 474, 499, 467 A.2d 288, 301 (1983), cert. denied, 467 U.S. 1256, 104 S.Ct. 3547, 82 L.Ed.2d 850 (1984). Recognizing that the sentencing phase of trial has a different purpose than the guilt determination phase, and that the privilege against self-incrimination and the presumption of innocence have no direct application to the latter phase, this Court has held that comment upon a defendant's failure to show remorse is permitted at least where the comment does not amount to an extended tirade focusing undue attention on the factor of remorse. *Id.*, 502 Pa. at 499–500, 467 A.2d at 300–301.

■ The prosecutor's comment in the instant case was brief, and was reasonable in relation to defense counsel's earlier argument to the jury that appellant was begging for mercy and for a chance to become a better and more

compassionate human being, thereby inferring, perhaps, that appellant was remorseful. Further, the court in its charge instructed the jury that appellant had no obligation to testify and that no adverse inference could be drawn from the failure to testify. Under the circumstances, we find no error arising from the prosecutor's comments.

Next, appellant raises a number of issues not raised in the court below. All consist of constitutional challenges to the death penalty statute, and to the practice of instructing juries on voluntary manslaughter in capital cases where the evidence would not support such a verdict. Appellant concedes that all of these issues have been considered and rejected by this Court in *Commonwealth v. Zettlemoyer,* supra, and in *Commonwealth v. Peterkin,* 511 Pa. 299, 513 A.2d 373 (1986), cert. denied, 479 U.S. 1070, 107 S.Ct. 962, 93 L.Ed.2d 1010 (1987). We are satisfied with our holdings in those cases, and perceive no need to re-examine the issues presented.

■ In accordance with our duty, under 42 Pa.C.S.A. § 9711(h)(3)(iii), to review sentences of death from the standpoint of their proportionality to sentences imposed in similar cases, *Commonwealth v. Zettlemoyer,* 500 Pa. at 63, 454 A.2d at 961, we have reviewed the sentence imposed upon appellant in light of sentencing data compiled and monitored by the Administrative Office of Pennsylvania Courts. See *Commonwealth v. Frey,* 504 Pa. 428, 443, 475 A.2d 700, 707–708 (1984), cert. denied, 469 U.S. 963, 105 S.Ct. 360, 83 L.Ed.2d 296 (1984). Our review of cases wherein the aggravating circumstances set forth in subsections (d)(6), (d)(8), and (d)(9) were present, and where no mitigating circumstances were present, such being the circumstances of the present case, discloses that a death sentence has been imposed in every case. Thus, appellant's sentence of death is neither excessive nor disproportionate to the penalties imposed in similar cases. Further, the record does not provide any basis for belief that the sentence imposed was the "product of passion, prejudice or any

other arbitrary factor," 42 Pa.C.S.A. § 9711(h)(3)(i). Accordingly, the sentence must be affirmed.

Judgment of sentence affirmed.

STOUT, J., did not participate in the consideration or decision of this case.