COMMONWEALTH of Pennsylvania,
Appellee,

v.

Robert KOPICZ, Appellant.

Superior Court of Pennsylvania.

Submitted Oct. 7, 2002.

Filed Dec. 19, 2003.

Andrea E. Metz, Reading, for appellant.

Alisa R. Hobart, Asst. Dist. Atty., Reading, for Com., appellee.

Before: MUSMANNO, GRACI and MONTEMURO *, JJ.

MONTEMURO, J.

¶ 1 In these consolidated direct appeals, Appellant Robert Kopicz challenges the constitutionality of the Registration of Sexual Offender's Act, 42 Pa.C.S.A. § 9791 *et seq.*, commonly known as Megan's Law II. For the reasons set forth below, we affirm.

¶ 2 In the summer of 2001, Detective Thomas Yeich of the Berks County District Attorney's Office filed five criminal complaints against Appellant charging him with the sexual molestation of five minors. The cases were consolidated for a plea hearing held on November 9, 2001, during

* Retired Justice assigned to Superior Court.

which Appellant entered open guilty pleas to three counts of indecent assault, 18 Pa.C.S.A. § 3126(a)(7), two counts of corruption of minors, 18 Pa.C.S.A. § 6301(a)(1), and one count of endangering the welfare of children, 18 Pa.C.S.A. § 4304.[1] Because a conviction of 18 Pa. C.S.A. § 3126(a)(7), indecent assault of a minor less than 13 years of age, is a predicate offense triggering an adjudication of sexually violent predator status under Megan's Law II, see 42 Pa.C.S.A. §§ 9795.1, 9795.4(a), the trial court ordered the State Sexual Offenders Assessment Board (Board) to evaluate whether Appellant is a sexually violent predator.

¶ 3 On March 22, 2002, Appellant filed a Motion for Extraordinary Relief challenging the constitutionality of Megan's Law II on several bases, and seeking suppression of certain psychiatric records utilized by the Board in its assessment. The trial court summarily denied Appellant's motion.[2] On March 25, 2002, following a sentencing and assessment hearing, Appellant was sentenced to an aggregate 3 to 8 years' imprisonment, followed by 5 years' probation. In addition, the court found Appellant to be a sexually violent predator

and, accordingly, subject to the registration, notification, and counseling provisions of the Act. Appellant filed a timely post sentence motion challenging, once again, the constitutionality of the Act, and seeking modification of his sentence; it was promptly denied by the trial court. These appeals follow.

¶ 4 On appeal, Appellant challenges the constitutionality of Megan's Law II on ten bases:

1) the Act violates Appellant's due process rights by subjecting him to the possibility of increased punishment without a jury determination pursuant to *Apprendi v. New Jersey*, 530 U.S. 466 [120 S.Ct. 2348, 147 L.Ed.2d 435] (2000);

2) the Act violates Appellant's due process rights by subjecting him to increased punishment based solely on his mental status;

3) the Act violates Appellant's due process rights because the definition of "sexually violent predator" is unconstitutionally vague;

4) the assessment hearing provision of the Act violates Appellant's rights

---

**1.** In appeal docket 580 MDA 2003, Appellant pled guilty to one count of corruption of minors for fondling the breasts of complainant M.M. on two occasions in April and May of 2001. In appeal docket 581 MDA 2003, Appellant pled guilty to one count of indecent assault committed against his daughter, M.K., who was under 13 years of age. During the period between January and June of 1999, when M.K. would enter Appellant's bedroom to say goodbye to him in the morning, Appellant would pull her onto the bed, make her lay on top of him, and would fondle her breasts and rub his genital area up and down against her. (N.T. Plea Hearing, 11/9/01, at 14). In appeal docket 582 MDA 2003, Appellant pled guilty to one count of indecent assault for fondling and digitally raping H.M., a minor under the age of 13, on numerous occasions between May and September of 1997. In appeal docket 583 MDA 2003, Ap-

pellant pled guilty to corruption of minors for fondling the breasts of complainant T.R. in June of 2000. Lastly, in appeal docket 584 MDA 2002, Appellant pled guilty to indecent assault and endangering the welfare of children for repeatedly fondling and digitally raping his stepdaughter C.S., who at the time was under the age of 13.

**2.** In her Opinion, the trial judge explained that another Berks County Common Pleas Court judge had recently reviewed the same constitutional challenges in a different case, *Commonwealth v. Michael Lee Sanford*, Docket No. 5310/00 (filed November 9, 2001), and found the Act to be constitutional. (Trial Ct. Op., dated 6/4/02, at 5). Based on the coordinate jurisdiction rule, the trial court declined to revisit the issues. (*Id.* at 5–6).

against self-incrimination and to equal protection under the law;

5) the public notification provision of the Act violates Appellant's right to privacy;

6) the Act violates Appellant's right to be free from cruel and unusual punishment;

7) the Act violates the separation of powers doctrine;

8) the Act violates Appellant's right to be free from double jeopardy;

9) the Act violates Article 1 § 10 of the Pennsylvania Constitution by subjecting Appellant to prosecution without an indictment; and

10) the Act violates Article 3 § 3 of the Pennsylvania Constitution, providing that no bill be passed containing more than one subject.

Additionally, Appellant contends that the trial court erred in denying his motion to suppress certain psychiatric records, protected under confidentiality laws, utilized by the Board in its assessment.[3] After a thorough review, we conclude that Appellant's claims are meritless.

¶ 5 Originally enacted in 1995, Pennsylvania's Megan's Law seeks "to protect the safety and general welfare of people of this Commonwealth by providing for registration and community notification regarding sexually violent predators who are about to be released from custody and will live in or near their neighborhood." 42 Pa.C.S.A. § 9791(b). The Act requires persons convicted of certain enumerated predicate offenses to register with the Pennsylvania State Police upon their release from prison and annually verify their residence for a period of 10 years. See 42 Pa.C.S.A. §§ 9795.1, 9796(b). The state police then forward this data, along with the offender's photograph and fingerprints, to the chief of police of the locality where the offender resides. Id. at §§ 9795.3(4), 9795.2(c). Persons adjudicated to be "sexually violent predators" must register with the state police for their lifetime, verify their residence on a quarterly basis, and attend monthly counseling sessions. Id. at §§ 9795.1(b), 9796(a), 9799.4. Moreover,

[f]or sexually violent predators, the police chief in turn notifies the individual's neighbors, as well as day care operators and school officials within the municipality. See 42 Pa.C.S. § 9798(b). The data sent to these recipients includes the offender's name, address, offense, and photograph (if available), as well as the fact that he has been determined to be a sexually violent predator, "which determination has or has not been terminated as of a date certain."[] See 42 Pa.C.S. § 9798(a). The sexually violent predator's name and address, including any subsequent change of address, is also sent to the victim of the offense, until the victim requests that such notification be terminated. See 42 Pa.C.S. § 9797.

*Commonwealth v. Williams (Williams II)*, 574 Pa. 487, 832 A.2d 962, 967 (2003) (footnote omitted).

¶ 6 In 1999, the Pennsylvania Supreme Court struck the sexually violent predator provisions of the Act, finding them to be constitutionally invalid. *Commonwealth v. Williams (Williams I)*, 557 Pa.285, 733 A.2d 593 (1999), *cert. denied*, 528 U.S. 1077, 120 S.Ct. 792, 145 L.Ed.2d 668 (2000). Under the original statute, a person convicted of one of the predicate sexual offenses was presumed to be a sexually violent predator, and bore the burden of rebutting that presumption with clear and convincing evidence. 42 Pa.C.S.A. § 9794 (deleted). Moreover, the Act mandated an increased maximum term of lifetime im-

---

3. We have reordered Appellant's issues for ease of disposition.

prisonment for those designated as sexually violent predators. *Id.* at § 9799.4(a) (deleted). The *Williams I* Court explained,

> Given our view, . . . that the proceedings set forth in the Act to determine whether one is a sexually violent predator is a separate factual determination, the end result of which is the imposition of criminal punishment, [*i.e.*, an increased maximum term of imprisonment for the offender's lifetime] we hold that anything less than the full panoply of the relevant protections which due process guarantees is violative of the Fourteenth Amendment. Accordingly, we find that the Act's imposition of the presumption that a person convicted of a predicate offense is a sexually violent predator, and the requirement that the offender rebut the presumption, to be constitutionally repugnant.

*Williams I, supra* at 603 (footnote omitted).

¶ 7 In May of 2000, the General Assembly passed Megan's Law II to correct the constitutional infirmities in the original statute. Significantly, the Act now places the burden on the Commonwealth to prove by clear and convincing evidence that a person convicted of one of the predicate offenses is a sexually violent predator as defined in the Act. Moreover, persons adjudicated to be sexually violent predators no longer face an automatic maximum lifetime sentence; rather, they are subject only to the registration, notification and counseling requirements for their lifetime.

¶ 8 On September 25, 2003, the Pennsylvania Supreme Court considered the first constitutional challenge to Megan's Law II in *Williams II, supra.* In that case, both appellees in the consolidated appeal had pled guilty to a predicate offense under the Act. In each case, the trial court ordered the Board to evaluate whether the appellee

should be designated as a sexually violent predator. Prior to the assessment hearings, however, both appellees filed a motion for extraordinary relief challenging the constitutionality of the sexually violent predator provisions of the amended Act. In both cases, the trial judge declared the provisions unconstitutional, and the Commonwealth appealed.

¶ 9 The primary constitutional challenge, upon which the trial court's decision was based, was predicated on the United States Supreme Court's decision in *Apprendi, supra.* In that case, the Supreme Court declared that "any judicial finding which results in punishment beyond the statutory maximum must be submitted to a jury and proven beyond a reasonable doubt." *Williams II, supra* at 968 (citing *Apprendi, supra* ). Accordingly, the *Williams II* Court explained the issue before it as follows:

> Because a determination of sexually violent predator status pursuant to Megan's Law II is submitted to a judge and may be established by a lesser degree of proof, *see* 42 Pa.C.S. § 9795.4(e)(3) (clear and convincing evidence standard), it cannot surmount *Apprendi* if such finding results in further criminal punishment. Thus, the central issue in these appeals is whether the registration, notification, and counseling provisions of the Act, applicable to persons deemed sexually violent predators, constitute criminal punishment.

*Id.* at 968–69. After applying the two-level inquiry set forth by the United States Supreme Court in *Smith v. Doe I,* 538 U.S. 84, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003), *i.e.,* consideration of (1) the legislative intent of the statute, and (2) its purpose and effect, determined by considering the seven factors outlined in the Court's 1963 decision, *Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644

(1963), the *Williams II* Court held that the registration, notification and counseling provisions of the Act do not constitute criminal punishment; rather, they "constitute non-punitive, regulatory measures supporting a legitimate governmental purpose." *Williams II, supra* at 986.

¶ 10 In the second part of the decision, the Court considered the penalty provisions applicable when an offender fails to register or verify his residence. As it now reads, the Act provides for a mandatory minimum penalty of lifetime probation, with the possibility of life imprisonment, for a violation of these subsections. *See* 42 Pa.C.S.A §§ 9795.2(d)(2); 9796(e)(2). The *Williams II* Court concluded,

> [a]s such measures are manifestly in excess of what is needed to ensure compliance, they must be considered punitive, and thus, unconstitutional insofar as they purport to apply to ... sexually violent predators.

*Williams II, supra* at 985. Rather than invalidating the entire statute, however, the Court found these sections to be severable, and struck them from the Act. *Id.* at 986. Moreover, the Court remanded the case to the trial court for consideration of the appellee's remaining constitutional challenges, several of which are raised in the appeal *sub judice*.

¶ 11 We now turn to Appellant's constitutional challenges. Preliminarily, we note that "a statute is presumed to be constitutional and will not be declared unconstitutional unless it clearly, palpably and plainly violates the Constitution." *Commonwealth v. Cotto*, 562 Pa. 32, 753 A.2d 217, 219 (2000). Thus, the heavy burden of proving the unconstitutionality of the statute lies with the challenger. *Id.*

¶ 12 In his first two constitutional challenges, Appellant argues that the registration, notification and counseling provisions of the Act violate his due process rights by subjecting him to the possibility of enhanced punishment (1) without a jury determination pursuant to *Apprendi, supra,* and (2) "based upon a present determination that a personality disorder or mental abnormality poses a threat of future dangerousness." (Appellant's Brief at 29). Both challenges are governed by *Williams II, supra.* Because the Supreme Court found that the registration, notification and counseling provisions were non-punitive, Appellant is not subject to "enhanced punishment" by virtue of his adjudication as a sexually violent predator. *See also Commonwealth v. Rhoads*, 836 A.2d 159, 162 (Pa.Super.2003) (relying on *Williams II,* holding that "all of appellant's constitutional challenges [to Megan's Law II], which hinge on the underlying assumption that the registration, notification and counseling provisions of the Act constitute criminal punishment and therefore, individually or collectively, violate one's constitutional rights by imposing an additional punishment without providing due constitutional safeguards, [are] without merit.").

¶ 13 Next, Appellant posits a third due process challenge to the Act, arguing that the definition of "sexually violent predator" is unconstitutionally vague. We disagree.

¶ 14 The Act defines a "sexually violent predator" as:

> A person who has been convicted of a sexually violent offense as set forth in section 9795.1 (relating to registration) and who is determined to be a sexually violent predator under section 9795.4 (relating to assessments) due to a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses.

42 Pa.C.S.A. § 9792. Moreover, "mental abnormality" is defined as:

A congenital or acquired condition of a person that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal sexual acts to a degree that makes the person a menace to the health and safety of other persons.

*Id.* Although the term "personality disorder" is not defined in the Act, it is a psychiatric term defined in the *Diagnostic and Statistical Manual of Mental Disorders IV*. Finally, the Act defines "predatory" sexually violent offenses as ones in which the act is "directed at a stranger or at a person with whom a relationship has been established or promoted for the primary purpose of victimization." 42 Pa. C.S.A. § 9792.

A statute is constitutionally void [for vagueness] only if it is so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application. However, a statute will not be deemed unconstitutionally vague if the terms, when read in context, are sufficiently specific that they are not subject to arbitrary and discriminatory application.

*Cotto, supra* at 220 (internal quotations and citations omitted).

¶ 15 Appellant contends that the definitions of "mental abnormality" and "personality disorder" provide no objective standards, so that the potential for an erroneous classification of an offender as a sexually violent predator is enormous. Indeed, he argues that, under the definition provided in the Act, an offender could be diagnosed as having a "mental abnormality" simply because the court deems him to be a "menace" to society. In addition,

because the psychiatric definition of "personality disorder" contains a catchall diagnosis, "identifying an offender as possessing a psychiatric disorder becomes merely a formality as an offender conceivably will fit within the overreaching parameters of this definition even if that offender does not fall within any of the other nine diagnoses." (Appellant's Brief at 23).

¶ 16 This Court's recent decision in *Commonwealth v. Rhoads*, 836 A.2d 159 (Pa.Super.2003), is controlling. There, as here, the appellant mounted a void for vagueness challenge against the Act's definition of "sexually violent predator." We noted that an offender is classified as a "sexually violent predator" **only** if he has been convicted of one of the predicate offenses listed in § 9795.1, and then **only** after he has undergone a thorough assessment hearing pursuant to § 9795.4. Section 9795.4(b) lists numerous factors that the Board must consider before making its determination. These factors relate to (a) the facts of the offense, *i.e.*, number of victims, the age and mental capacity of the victim, the relationship of the offender to the victim, the nature of the sexual contact, and whether force or unusual cruelty was used in the attack; (b) the offender's prior history, *i.e.*, his prior criminal record, including sentences completed, and his participation in sexual offender programs; (c) the characteristics of the offender, *i.e.*, his age, use of illegal drugs, mental illness or abnormality, and any behavioral characteristics that contribute to his conduct; and (d) any other relevant factors relating to his risk of reoffense. 42 Pa.C.S.A. § 9795.4(b). As we held in *Rhoads, supra*,

Given the definitive filtering mechanism offered by § 9795.1 in term[s] of clearly defining who is subject to a SVP assessment and the exhaustive determinative factors utilized in making such an assessment in accordance with § 9795.4,

we find the statute is sufficiently clear and specific to withstand appellant's constitutional challenge.

*Id.* at 162–63. Appellant offers no new argument here; thus, his claim fails.

¶ 17 Next, Appellant argues that the assessment hearing provision of the statute violates his right against self-incrimination and his right to equal protection under the law.

¶ 18 Appellant contends that the Act forces him to give evidence against himself during the assessment process since it allows the Board "to requisition as evidence for the prosecution all statements made by Appellant when he was institutionalized or subjected to a court-ordered evaluation at any state facility in the absence of *Miranda* warnings and/or his attorney's presence[.]" (Appellant's Brief at 24–25). Moreover, Appellant notes that by subjecting him to an assessor's interrogation, the Act requires him to provide the Commonwealth with the evidence it needs to establish his mental abnormality.

¶ 19 "The fifth amendment privilege against self-incrimination protects any individual from being officially coerced to give testimonial evidence which would be incriminating in the sense of furnishing a link in the chain of evidence needed to prosecute." *Commonwealth v. Moore,* 400 Pa.Super. 151, 583 A.2d 1, 3 (1990), *appeal denied,* 527 Pa. 623, 592 A.2d 44 (1991) (citations omitted). At the assessment stage of the proceedings, Appellant is no longer subject to prosecution as his guilt has already been determined. Moreover, as the Supreme Court declared in *Williams II,* the registration, notification, and counseling provisions of the Act do not constitute criminal punishment. *Williams II, supra* at 986. Therefore, any statements an offender makes during his as-

sessment hearing could not be used to "incriminate" him.

¶ 20 As for his equal protection claim, Appellant, in a one-sentence argument, contends that the Act treats offenders differently depending on their financial status, in that "it requires an indigent defendant to turn over the state reports of a court-appointed expert, but does not require the release of reports of a privately retained expert." (Appellant's Brief at 26). As Appellant has failed to develop this claim with citation to any pertinent authority or reasoned discussion, we find it waived. Pa.R.A.P. 2119(a); *Commonwealth v. Lilliock,* 740 A.2d 237, 244 (Pa.Super.1999), *appeal denied,* 568 Pa. 657, 795 A.2d 972 (2000).

¶ 21 Next, in a brief argument, Appellant challenges the purported broad, unrestricted dissemination of his personal information under the Act as violative of his right to privacy. However, the only support he provides for this claim is a federal district court decision interpreting another state's statute. In *Paul P. v. Farmer,* 80 F.Supp.2d 320 (D.N.J.2000), a class of sex offenders challenged New Jersey's Megan's Law, claiming that "the procedures currently used to distribute Megan's Law notices have failed to prevent the disclosure of confidential information to persons not entitled to that information under the Act." *Id.* at 322. In support of their claim, the plaintiffs "summarized forty-five incidents where confidential information released under Megan's Law was distributed to unauthorized persons[,]" including one case in which a registrant's name, photograph, address, and criminal history was reproduced on the front page of a local newspaper. *Id.* at 324. The district court judge granted the plaintiff's motion for summary judgment, finding that "the record before this Court shows that the current system fails to meet this

standard." *Id.* at 325. No such allegations are raised here. Indeed, Appellant is still incarcerated; he has not yet been subject to the registration requirements, nor has his personal information been disseminated. Accordingly, considering the strong presumption of constitutionality afforded to all legislative enactments, *Commonwealth v. Barud,* 545 Pa. 297, 681 A.2d 162, 165 (1996), we find no reason to invalidate the Act on this basis.

¶ 22 In his sixth constitutional challenge, Appellant claims that the Act violates his right to be free from cruel and unusual punishment. As the *Williams II* Court held that the registration, notification and counseling provisions of the Act do not constitute punishment, this argument necessarily fails.[4]

¶ 23 Next, Appellant contends that the Act violates the separation of powers doctrine, "in that it sets up an executive agency to perform an adjudicative function in a judicial proceeding . . . ." (Appellant's Brief at 31). Article 5, § 1 of the Pennsylvania Constitution provides for a unified judicial system:

> The judicial power of the Commonwealth shall be vested in a unified judicial system consisting of the Supreme Court, the Superior Court, the Commonwealth Court, courts of common pleas, community courts, municipal and traffic courts in the City of Philadelphia, such other courts as may be provided by law

and justices of the peace. All courts and justices of the peace and their jurisdictions shall be in this unified judicial system.

Nothing in the Act usurps the power of the courts to make judicial determinations. Although the Act does establish a Board to conduct an assessment of the offender to determine whether he should be classified as a sexually violent predator, *see* 42 Pa. C.S.A. §§ 9795.4(b), 9799.3, the Board's conclusion is not final. Indeed, once the assessment is completed, upon motion of the Commonwealth, the trial court is required to hold a hearing, during which both the offender and the Commonwealth are permitted to present and cross-examine witnesses, with the Commonwealth bearing the burden of proving by clear and convincing evidence that the offender is a sexually violent predator. *Id.* at § 9795.4(e)(1), (e)(2). The trial court then makes the final determination. *Id.* at § 9795.4(a)(3). Therefore, contrary to Appellant's assertion, the Board does not perform an adjudicative function.

¶ 24 Appellant also claims that the Act violates his constitutional protection against double jeopardy. Relying on *Williams I, supra,* Appellant argues that "a hearing held under Megan's Law II is the equivalent of a separate criminal proceeding, and thus, the hearing to adjudicate him as a sexually violent predator is a violation of Appellant's right not to be subject to double jeopardy." (Appellant's

4. Despite its ultimate conclusion, however, the Court was troubled by the fact that sexually violent predators are subject to these requirements for their entire lifetime. The Court noted that "[a] reasonable argument could be made that, to avoid excessiveness, the Legislature was required to provide some means for a sexually violent predator to invoke judicial review in an effort to demonstrate that he no longer poses a substantial risk to the community." *Williams II, supra* at 982–83. However, the Court acknowledged

that any such argument assumes that sexually violent predators are capable of being fully cured of the mental abnormality or personality disorder driving their behavior. *Id.* at 983. Because the appellees failed to provide any information concerning the prospect of successful treatment, the Court declined to find the statute unconstitutional on that basis. *Id.* No such evidence or documentation is provided here, either. *See Commonwealth v. Haughwout,* 2003 Pa.Super. 427, ¶¶ 21–22 (Pa.Super.2003).

Brief at 35). However, the flaw in Appellant's argument is that the *Williams I* Court analyzed the former version of the Act, in which a person adjudicated to be a sexually violent predator was subjected to an increased maximum term of life imprisonment. 42 Pa.C.S.A § 9799.4(a) (deleted). That Court invalidated the sexually violent predator provisions in the statute. Megan's Law II, applicable here, does not provide for an increased term of imprisonment for sexually violent predators. Moreover, as the *Williams II* Court held, the Act's registration, verification, notification and counseling provisions do not constitute criminal punishment; accordingly, a hearing to determine sexually violent predator status does not place a person in "jeopardy." Therefore, Appellant's double jeopardy rights are not even implicated during the assessment proceeding, much less violated.

▪ ¶ 25 Appellant's final two constitutional challenges are based on purported violations of the Pennsylvania Constitution. First, Appellant argues the assessment process violates the provision in Article 1, § 10 mandating that all criminal prosecutions be initiated by information. However, as discussed *supra,* the assessment process is not a separate criminal prosecution. Accordingly, this provision is inapplicable. In addition, Appellant contends that the Act violates Article 3, § 3 providing that "[n]o bill shall be passed containing more than one subject ...." This claim was raised and rejected in *Rhoads, supra* at 163, which we find dispositive.

¶ 26 In his final claim, Appellant contends that the trial court erred in denying his motion to suppress certain psychiatric records utilized by the Board in its assessment. Specifically, Appellant argues that the Board's use of "Berks County Children and Youth records from 8/1/89 though 8/29/89," and two Sexuality Evaluations performed by a psychologist at Reading Specialists, dated 6/11/01 and 7/3/01 respectively, violates his right to psychologist/patient confidentiality pursuant to 42 Pa.C.S.A. § 5944 (Confidential communications to psychiatrists or licensed psychologists) and 50 P.S. § 7111 (Confidentiality of records under Mental Health Procedures Act).[5]

¶ 27 Section 5944 protects all communications between a psychiatrist/psychologist and his patient made during the course of the patient's treatment:

> No psychiatrist or person who has been licensed ... to practice psychology shall be, without the written consent of his client, examined in any civil or criminal matter as to any information acquired in the course of his professional services in behalf of such client. The confidential relations and communications between a psychologist or psychiatrist and his client shall be on the same basis as those provided or prescribed by law between an attorney and client.

50 P.S. § 7111(a) provides similar protection under the Mental Health Procedures Act: "All documents concerning persons in treatment shall be kept confidential and, without the person's written consent, may not be released or their contents disclosed to anyone ...."[6]

---

5. Appellant also posits a challenge based on 42 Pa.C.S.A. § 5945, protecting the confidentiality of communications between students and school personnel. However, Appellant fails to explain how this section is applicable here, as he is a 58–year–old adult. Moreover,

none of the documents reviewed by the assessor appear to be school records. *See* Sex Offender Evaluation, dated 2/17/02, at 1–2.

6. The Act provides four limited exceptions not relevant here.

¶ 28 However, as this Court has noted, the privilege is not all-encompassing.

> [I]t is clear that the [psychologist/patient] privilege is designed to protect confidential communications made and information given by the client to the psychotherapist **in the course of treatment**. The psychiatric file is imbued with the privilege because it might contain such confidential information. However, the privilege is not designed to specifically protect the psychotherapist's own opinion, observations, diagnosis, or treatment alternatives particularly when such information finds its way beyond the client's personal file. While such information may be protected from disclosure by some other privilege, we decide that § 5944 is designed to protect disclosures made by the client.

*Commonwealth v. Simmons*, 719 A.2d 336, 341 (Pa.Super.1998) (emphasis added).

¶ 29 With respect to the Berks County Children and Youth Records, Appellant fails to explain how these documents violate psychologist/patient confidentiality. There is no indication in either his brief, or in the assessor's evaluation, that these documents included statements Appellant made to a psychologist during the course of treatment. Moreover, as this Court recently held in *Commonwealth v. Carter*, 821 A.2d 601, 607, (Pa.Super.2003), "Section 9795.4 of the Registration of Sexual Offenders Act should be construed as an exception to Section 6307 of the Juvenile Act[,]" which protects the confidentiality of records which fall under the Juvenile Act. Clearly, any documents obtained from Berks County Children and Youth would meet this exception. *See also* § 9795.4(c) (mandating that "[a]ll State, county and local agencies ... shall cooperate [with the Board] by providing copies of all records and information requested by the board in connection with the court-ordered assessment ...").

¶ 30 Appellant's objection to the Board's use of his sexuality evaluations must also fail. As discussed *supra*, the psychologist/patient privilege protects only statements made by the patient to his psychologist during the course of treatment. Here, Appellant argues that these "evaluations" are protected. However, evaluations are distinct from treatment records, and Appellant does not contend that they were performed during the course of treatment. Moreover, he fails to specify what, if any, statements he made during these evaluations that were used by the assessor in violation of the privilege. Accordingly, we find no basis to afford relief.

¶ 31 Judgment of sentences affirmed.

¶ 32 GRACI, J. files a Concurring Statement.

GRACI, J., concurring.

¶ 1 I readily join the thorough and typically scholarly Opinion of the majority in all save one respect. I agree that Appellant's self-incrimination claim, like his remaining claims, should be rejected and that his conviction and sentence should be affirmed. I rely on grounds different from the majority, however, on this issue.

¶ 2 As the majority observes, Opinion, at 350, I recognize that by the time of the assessment hearing a defendant's guilt has been conclusively established (subject to review on appeal) and that the registration, notification and counseling provisions of Megan's Law II do not constitute criminal punishment. In my view, however, those facts do not resolve Appellant's self-incrimination claim.

¶ 3 The privilege against self-incrimination " 'can be asserted in any proceeding, civil or criminal, administrative or judicial,

investigatory or adjudicatory,' in which the witness reasonably believes that the information sought, or discoverable as a result of his testimony, could be used in a subsequent state or federal criminal proceeding. *Kastigar v. United States*, 406 U.S. 441, 444–445, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972); see also *McCarthy v. Arndstein*, 266 U.S. 34, 40, 45 S.Ct. 16, 17, 69 L.Ed. 158 (1924) (the privilege 'applies alike to civil and criminal proceedings, wherever the answer might tend to subject to criminal responsibility him who gives it')." *United States v. Balsys*, 524 U.S. 666, 672, 118 S.Ct. 2218, 141 L.Ed.2d 575 (1998). Therefore, it is not enough to say that "[a]t the assessment stage of the proceedings, Appellant is no longer subject to prosecution as his guilt has already been determined." Opinion, at 350. That was the apparent rationale of a number of Pennsylvania Supreme Court decisions which had held that the privilege "in its pure form" had no direct application to the penalty phase of a capital murder trial. *See Commonwealth v. Edmiston*, 535 Pa. 210, 634 A.2d 1078, 1089 (1993) ("The privilege against self-incrimination has no direct application to a determination of the proper sentence to be imposed because the presumption of innocence which accompanies the accused throughout the proceedings to determine his guilt has no direct application to the sentencing determination."); *Commonwealth v. Travaglia*, 502 Pa. 474, 467 A.2d 288, 300 (1983) ("[T]he privilege against self-incrimination in its pure form has no direct application to a determination of the proper sentence to be imposed; the purpose of the prosecutor is not to 'incriminate,' and the goal of the guilty defendant is not to avoid 'incrimination.' "), *cert denied sub nom.*, *Travaglia v. Pennsylvania*, 467 U.S. 1256, 104 S.Ct. 3547, 82 L.Ed.2d 850 (1984). *Accord Commonwealth v. Rice*, 568 Pa. 182, 795 A.2d 340, 358 (2002) (opinion announcing judgment of court) ("the sentencing phase of trial has a different purpose than the guilt determination phase, and … the privilege against self-incrimination … has no direct application to the latter phase"); *Commonwealth v. Lester*, 554 Pa. 644, 722 A.2d 997, 1009 (1998) (same); *Commonwealth v. Holland*, 518 Pa. 405, 543 A.2d 1068, 1077 (1988) (same). The Supreme Court, however, has recently repudiated this line of authority and has recognized that the privilege is applicable to the penalty phase of capital trials. *Commonwealth v. Freeman*, 573 Pa. 532, 827 A.2d 385, 410 (2003) (finding violation of privilege but concluding it was harmless beyond a reasonable doubt.)

¶ 4 It could certainly be asserted that statements made during the assessment process could be used to form the link in the chain of evidence needed to prosecute, not necessarily for the offense for which the offender has already been found guilty by plea or jury verdict (although in light of *Freeman* and the cases it relies on, that may be irrelevant), but for some other offense. That alone would be grounds for invoking the privilege. That the privilege could be invoked, however, does not end the inquiry.

¶ 5 The United States Supreme Court has recently explained that "mere coercion does not violate the text of the Self-Incrimination Clause absent use of the compelled statements in a criminal case against the witness." *Chavez v. Martinez*, 538 U.S. 760, ——, 123 S.Ct. 1994, 2002, 155 L.Ed.2d 984 (2003) (plurality); *Id.*, at ——, 123 S.Ct. at 2006 (Souter, J., joined by Breyer, J., concurring) (agreeing that "the text of the Fifth Amendment … focuses on courtroom use of a criminal defendant's compelled, self-incriminating testimony, and the core of the guarantee against compelled self-incrimination is the exclusion of

any such evidence.").[7]

¶ 6 In the case *sub judice*, Appellant does not tell us what, if any compelled statements were used in any criminal proceeding against him. He argues in the abstract that Megan's Law II "allows the Assessment Board to compel Appellant 'to give evidence against himself' by allowing the Board to requisition as evidence for the prosecution all statements made by Appellant when he was institutionalized or subjected to a court-ordered evaluation at any state facility' and that the "[u]se of such information obtained after the grant of privilege constitutes a violation of the right against self-incrimination." Consolidated Brief for Appellant, at 24–25. He never identifies in his brief what statements of his were used against him at the Megan's Law II assessment hearing (assuming *arguendo* that such a proceeding is a "criminal case" for purposes of application of the privilege). We do not address constitutional issues in the abstract. Since Appellant points to no concrete use of any statement he was compelled to give in any criminal case against him, I would reject his self-incrimination claim and, for the reasons expressed herein, join the majority in doing so.

---

7. The protection afforded against self-incrimination by Article I, § 9 of the Pennsylvania Constitution, Pa. Const. Art. I, § 9, provides no greater rights than the Fifth Amendment to United States Constitution, U.S. Const. amend. v. *Commonwealth v. Arroyo*, 555 Pa. 125, 723 A.2d 162, 166–67 (1999) (citing *Commonwealth v. Morley*, 545 Pa. 420, 681 A.2d 1254, 1258 (1996), and *Commonwealth v. Swinehart*, 541 Pa. 500, 664 A.2d 957, 962–65 (1995)).